# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY

JUNE TERM, 1882.

ERWIN DAVIS, appellant,

*v.*

JENNIE M. FLAGG et al., respondents.

If the money secured by a mortgage is justly due, the motives of a person in acquiring an assignment of it, and in foreclosing it, and his refusal to assign it to a third party, the money due being tendered to him, lay no ground for the staying of such foreclosure suit.

On appeal from a decree based on the following opinion of Van Fleet, V. C.:

The evidence shows, beyond all doubt, that the mortgage in suit was purchased and suit brought thereon for some other purpose than collecting the money due on it. If this is not so,

491

it is difficult to see why Mr. Davis cannot say at once, without direction or instruction from his counsel, whether or not he will receive the amount due and assign the mortgage. It is easy to see how Mr. Davis may use his suit to oppress the Flaggs, and aid Mr. Baldwin in his litigation with them.

Legal remedies must be used for honest purposes. They must be used to obtain justice, and not to do wrong. Mr. Davis has an unquestionable right to enforce the payment of the money due to him on his mortgage, and to that end may bring a suit to have the mortgaged premises condemned to sale, and sold, but he has no right to employ his remedy, nor to suffer it to be used in such manner as shall give somebody else an unfair and unjust advantage over his debtor.

The proofs leave no doubt on my mind that Mr. Davis is permitting his money and his right of action in this court to be used by Mr. Baldwin's New York counsel for some other purpose than simply collecting the money due on his mortgage. In other words, he is suffering his right of action to be prostituted. The court, perhaps, cannot compel Mr. Davis to assign his mortgage, but it may unquestionably, on being satisfied that he is using its process for inequitable ends, deny him the further use of its process.

If Mr. Davis can get, by simply transferring his right to the mortgage, without incurring any liability whatever, or undergoing any labor or trouble, except to write his name, every penny that the court could make for him by selling the defendant's property, what possible consideration of either strict legal right or justice can he urge in defence of his conduct in refusing to take his money on those terms, and demanding that it shall come to him either as an unconditional payment or a judicial sale?

Relief of the kind I propose to give has been twice extended by the courts of our sister states of Pennsylvania and New York to defendants similarly situated. *Lyon's Appeal, 61 Pa. St. 15; Foster* v. *Hughes, 51 How. Pr. 20.*

An order will be advised that if the complainant refuses to assign his mortgage to such person as the defendants may desig-

Davis *v.* Flagg.

nate, on tender of the full amount due to him, together with the draft of a proper assignment to be executed by him, his action shall be stayed. The tender must be made within ten days after the date of the order, to the complainant's solicitor, and must cover the whole sum due for principal and interest and taxed costs, including the costs of the dismissal of the present bill. The complainant has a right to be protected by a dismissal against liability for subsequent costs.

*Mr. C. Parker*, for appellant.

*Mr. A. Q. Keasbey*, for respondents.

The opinion of the court was delivered by

BEASLEY, C. J.

The facts to which the court in this case is to apply the law, are these:

Mrs. Flagg was the owner of certain premises, upon which she gave two certain mortgages of different dates, the first, in the order of priority, being executed in favor of the Mutual Life Insurance Company of New York, and the second to Abram H. Baldwin. This latter-named mortgagee filed a bill to foreclose his mortgage, and to that bill Mrs. Flagg, the mortgagor, put in an answer setting up a defence. It is alleged, and for present purposes it will be assumed, that it has been proved that Baldwin then procured the above-mentioned first mortgage to be assigned by the Mutual Life Insurance Company to one McCoon, and subsequently by him to Erwin Davis, the appellant in these proceedings. In this state of the facts Mr. Davis proceeded to foreclose this first mortgage, making Mrs. Flagg, and her husband, and Baldwin, the holder of the second mortgage, parties. It further appeared that after this first encumbrance had been assigned to McCoon, an offer was made, in the interest of Mrs. Flagg, to pay the money due on such mortgage, provided an assignment should be made to the third person so advancing the money. This requisition was not complied with, and there-

upon the counsel of Mrs. Flagg obtained an order on Davis to show cause why his foreclosure suit should not be stayed. And testimony having been taken under that rule, and the foregoing facts having been substantially developed, an order was granted which was essentially to this effect : that if upon a tender made by the defendant Mrs. Flagg, or by any one in her behalf, of the full amount of the principal and interest due upon the mortgage held by Davis, together with his taxed costs, the said Davis should refuse to assign his bond and mortgage to such person or corporation as Mrs. Flagg might designate, all further proceedings in such foreclosure suit should be stayed, provided said tender be made within ten days from the date of said order, and that said Davis, on receiving the money and making the assignment, should enter an order dismissing his bill.

The order appealed from cannot stand. It proceeds upon the principle that although a second mortgagee has a right, as a general rule, to buy in a first mortgage and proceed to foreclose under it, yet if his motives are bad in acquiring such interest, equity will not permit him to prosecute such suit. This view, it seems to me, is founded on the fallacy that equity can base its action on a state of mind, irrespectively of the fact that the conduct induced by it is entirely lawful, and in a legal sense, equitable. The legal pursuit of one's right, no matter what may be the motive of the promoter of the action, cannot be deemed either illegal or inequitable. In the present case, whatever the purpose of this second mortgagee may have been, he did no illegal act ; the purchase of the first mortgage was legal, and the prosecution founded on it was legal ; and the consequence is, that his suit cannot be stayed unless the rule is to be sanctioned, that an assignee of a mortgage has no right to foreclose it, provided it be shown that in obtaining such encumbrance he was actuated by ill-will or other immoral feeling. The abstract precepts of the moral code, disconnected from property and the rights of persons, are neither enforced nor noticed by courts of law or by courts of equity. It is true that this second mortgagee, or, what is the same thing, the person who represented his interest in this affair, refused to accept the money due on the first encumbrance

Davis *v.* Flagg.

and assign such instrument to a third person.  But, again, that
refusal was neither illegal nor inequitable; so that we have but
the option to set aside the order made in this case, or to sanction
the rule that a legal and equitable right is not enforceable in a
court of chancery, if the motive leading to the acquisition of
such right has been immoral or otherwise censurable.  But the
adoption of such rule would be, as it would seem, quite at vari-
ance with some of the most primary principles of our system of
jurisprudence.

As the foregoing view has been justified by a reference to the
fundamental ground of the law, it does not seem to be at all
necessary to fortify it by a reference to adjudged cases, but as
some of the remarks of the court in *Morris* v. *Tuthill, 72 N. Y.
575,* a case contained in the brief of the counsel of the appel-
lant, are so apt to the matter in hand, a quotation of some of
them will not be out of place, as it will obviate the necessity of
further discussion.  The case referred to arose in a foreclosure
suit, the answer setting up a conspiracy to prevent "the defend-
ants from raising the money to pay the two mortgages in suit;
that to pay such mortgages it was necessary to raise a large part
of the money on the credit of the premises, and that a savings
bank had agreed to make the necessary advances on the security
of these mortgages, and that the complainant had fraudulently
promised an assignment of such security.  In reference to these
matters the court said : " The motives of the former owner of
the mortgages in selling, or of the plaintiffs in buying them, are
not material, and the appellant has no concern with the con-
sideration of the assignment.  It is sufficient that the mortgage
debt is due, and is now owned by the plaintiff.  He may have
bought the mortgages from motives of malice toward the defend-
ant and solely with a view to sue upon them, and the former
owner from a like motive may have transferred them without
consideration, but this would not constitute a defence to the
action.  The appellant can only arrest the action by paying the
amount due, or tendering the same and bringing it into court.
The facts stated do not constitute an equitable defence."

This, it seems to me, is a correct statement of the law on this subject.

But it is claimed by the counsel of the respondent that the order in question is not an appealable decision. This position is not sustainable. The order is founded on a denial of the equitable right of the complainant to prosecute his suit, and imposes a condition upon him, and arrests his proceeding for an indefinite time. And this judicial action does not even purport to have been made as an exercise of discretion, but is an adjudication founded on the supposed equities of the case viewed in the light of established rules. Such a decision, according to a train of decisions in this court, is plainly the subject of an appeal.

The decree should be reversed.

*Decree unanimously reversed.*