Arkenburgh v. Lakeside Residence Association.

---

OLIVER M. ARKENBURGH, executor of Robert H. Arkenburgh,

*v.*

THE LAKESIDE RESIDENCE ASSOCIATION and ELIZA J. ARKENBURGH.

[Filed September 9th 1897.]

1. Where a mortgage, due in a specified time, provides that in case any tax remains unpaid for ninety days after it becomes due and payable, the principal sum shall become due, the unexcused failure to pay taxes within ninety days after becoming due matures the mortgage.

2. Where a mortgage is held by two executors, and one of them refuses to join in a suit for its foreclosure, the other executor may file a bill for foreclosure, making the one refusing to join a defendant.

On bill to foreclose.   Heard on pleadings and proofs.

The bill is in the ordinary form to foreclose a mortgage made by one Dunn to the complainant, Oliver M. Arkenburgh, and the defendant Eliza J. Arkenburgh, as executor and executrix of the last will of Robert H. Arkenburgh, deceased.   The mortgage, with the accompanying bond, was given to secure part of the consideration money of a conveyance by the executor and executrix to Dunn, the mortgagor, of land of which the testator died seized, the conveyance being made by virtue of power for that purpose found in his will.

The allegation and proof are that the defendant Eliza J. Arkenburgh refused to join with the complainant in the suit for foreclosure.

Besides the ordinary prayer to foreclose, there is a prayer to reform the mortgage, which was drawn by a New York conveyancer and was made to the two executors and "their successors and assigns."   The prayer for reformation is that it may be declared to be payable to their heirs and assigns.   The proof is clear on this subject, and no question is made but that it should be so reformed.

The defence to the action is that the amount secured by the mortgage was not, by its terms, due when the bill was filed, to wit, February 25th, 1897.

The mortgage was dated the 16th of July, 1894, to secure the sum of $22,500, with interest at five per cent., payable semiannually, on the 16th day of January and July in each year, with installments on account of the principal as follows : $2,500 in one year, $2,500 in two years, $2,500 in three years, $2,500 in four years and $12,500 in five years from the date of the bond.   The mortgage contains a clause to the effect that

"should any default be made in the payment of the said interest or said principal sum, or of any part thereof, on any day whereon the same is made payable, as above expressed, or should any tax, assessment, water rent or other municipal or governmental rate, charge, imposition or lien be hereafter imposed or acquired upon the premises described in this mortgage, and become due and payable, and should the said interest or said principal sum or any part thereof remain unpaid and in arrear for the space of thirty days, or said tax, assess-

ment, water rent or other municipal or governmental rate, charge, imposition or lien, or any or either of them, remain unpaid and in arrear for the space of ninety days, then and from thenceforth, that is to say, after the lapse or expiration of the said periods, as the case may be, the aforesaid principal sum of $22,500 shall become due."

The allegation of the bill is that on the 15th of October, 1896, the taxes assessed against said property by the mayor and common council of the city of Rahway, where the same is situate, for the year 1896, became a lien thereon and have remained unpaid and in arrear for the space of ninety days before the filing of the bill, and that on the 16th of January, 1897, there became due and payable six months' interest upon said bond and mortgage, and that the same remain in arrear and unpaid for the space of thirty days.

It is proper to say that this clause in the mortgage was intended to be, but appears not to have been, set out in the bill. No point was made about that omission, either in the answer or at the hearing, and the cause was tried precisely as if that clause had been inserted in the bill, which has since been amended accordingly.

The property was conveyed by Dunn, the mortgagor, immediately after the giving of the mortgage to the defendant the Lakeside Residence Association. In fact, Dunn was a mere figure-head for the corporation defendant.

The corporation and Mrs. Arkenburgh have separately answered and by different solicitors, but the solicitor of Mrs. Arkenburgh is a mere clerk in the office of the solicitor of the corporation.

The defence manifested by the answer of the corporation is that all the payments of interest were duly made; that the installment of interest due on the 16th of January, 1897, was paid, before it was due, to the defendant Eliza J. Arkenburgh by a check drawn to the order of both executors, Eliza and the complainant. The precise allegation of the answer in that respect is that the mortgage had previously been in the hands of the complainant as the acting executor, and that payments of interest having been theretofore made to the complainant, the defendant

Eliza, before the 16th of January, 1897, notified the corporation, in writing, not to pay any more interest to the complainant; that the defendant corporation made an offer to the complainant to pay him and his co-executor, Eliza, jointly, which the complainant refused to accept, whereupon the defendant corporation paid the installment of interest to Eliza and took a receipt from her for the amount. The further allegation is that there is no tax due or unpaid upon the premises, and that all taxes have been paid, and that no covenant or condition of the said mortgage which the defendant corporation is obligated to keep or perform has been broken or unfulfilled.

The answer further sets up that the co-mortgagee, Eliza, does not wish the mortgage to be declared to be due and payable, and that she is willing and ready to accept and receipt for the installments of interest and principal as they severally fall due. In effect it is a statement that she waives the breach, if any, of the conditions.

The answer of Eliza denies that the complainant has been the managing executor of the estate, or that he has any special right or authority to hold the possession of the bond and mortgage, but that such bond and mortgage, together with the other assets of the estate, are and of right should be held jointly by the defendant and the complainant. It further sets up that all the installments of interest have been duly paid, and that Oliver was, by order of a court of competent jurisdiction, ordered to pay over and deposit in a trust company designated in the order the interest and installments of principal so received by him, and that he has failed and neglected so to do. It then sets out that she caused a written notice to be served on the corporation, directing it to pay to her the installment of interest then to become due. She then says that she does not desire that the bond and principal should become due and payable at once by reason of the non-payment of the interest if it was not paid, or the taxes if they were not paid, but, on the contrary, elects that as long as said installments of interest and principal are paid according to the conditions of said bond, and the taxes assessed or to be assessed against the premises are promptly paid, to

continue said bond and mortgage according to its terms and conditions.

It appeared in proof that the bond and mortgage had always been in the possession of the complainant as acting executor, and that he received the payments of interest.

It appears that the taxes were duly assessed upon the premises for the year 1896, and became due and payable on the 15th of October, and that they were not paid within two months, and in fact, were not paid until the last of May or 1st of June, 1897, and after the filing of the bill.

It further appears that on the 11th of January, 1897, five days before the last installment of interest became due, Mrs. Arkenburgh served upon Mr. Savage, the president of the corporation defendant, a notice reciting that the payments of interest had been previously made to the complainant, and

"that hereafter no payments for or on account of the principal or interest of said bond will be due satisfaction thereof except such payment be by check to the joint order of said executor and myself as such executrix."

That previous to that time, to wit, on the 21st of December, 1896, the complainant had notified Mr. Savage, in writing, of the semi-annual interest, amounting to $437.50, coming due on the 16th of January, 1897, at which time payment would be expected; that the check for same must be made payable to the order of the estate of R. H. Arkenburgh, and sent to him at his address, Great Barrington, Massachusetts.

Subsequently and before the 16th of January, Mr. Arkenburgh called upon Mr. Savage at his place of business, and, not finding him in, wrote him a note informing him that any payment of interest made to Mr. Souther (the New York attorney of Mrs. Arkenburgh) would not be acknowledged, as he had no authority whatever to collect any money due the estate of R. H. Arkenburgh.

Notwithstanding that notice, Mr. Savage, on the 13th of February—just three days before the interest fell due—drew a check of the defendant corporation in favor of Eliza J. Arkenburgh, executrix, and Oliver M. Arkenburgh, executor, of

Robert H. Arkenburgh, for the sum of $437.50, and delivered it to Mr. Souther, who signed a receipt for it as attorney of Mrs. Arkenburgh. Some difficulty occurred in negotiating the check without the endorsement of Oliver M. Arkenburgh, but it seems finally to have been cashed upon the endorsement alone of Mrs. Arkenburgh, and deposited to the credit of the estate of Arkenburgh in the trust company on the 2d of March, 1897. Complainant had no notice of this payment until after that day.

The will of Arkenburgh was put in evidence, showing how his estate was divided, and that the complainant was only entitled to one-eighth of it; and an attempt was made to prove that all the other persons beneficially interested in the estate were desirous that the mortgage should not be collected, but that the so-called forfeiture for non-payment of interest and taxes should be waived, and the loan permitted to stand.

In answer to that the complainant asserted that only a small portion of the bond and mortgage in question belonged to the estate of Arkenburgh, and that in point of fact the deceased held the premises conveyed by the mortgage in trust for himself and other persons, known as the Kinseys, and that that trust had been followed and fastened upon the mortgage by a decree of the supreme court of New York, made on the 29th of October, 1895, and that the complainant, Oliver M. Arkenburgh, and his solicitor in this matter, represent those *cestuis que trust,* and were instructed by them to enforce the mortgage. In support of that allegation, they produced a printed copy (certification and exemplification being waived) of the pleadings and decree in a suit in the supreme court of New York, brought by Jeannette A. Allen, against Oliver M. Arkenburgh and Eliza J. Arkenburgh, individually, and as executor and executrix of the will of Robert H. Arkenburgh, in which the trust was set up and enforced. To that suit Eliza J. Arkenburgh alone made defence, by Mr. Souther, as her attorney. The complainant, Oliver, answered separately, and substantially admitted the trust. The decree was in favor of the *cestuis que trust,* and by it it was ordered, adjudged and decreed that the defendants therein hold the bond and mortgage sought to be foreclosed as trustees for

the benefit of Thomas H. Kinsey, Robert H. Kinsey, Jeannette A. Allen and Robert H. A. Adams, and the estate of Robert H. Arkenburgh. An appeal was taken from that decree to the appellate division of the supreme court, and it was affirmed for the reasons given in the opinion. A further appeal has been taken to, and is now pending in, the court of appeals.

There was further put in evidence a decree of the surrogate's court of the county of Rockland, State of New York, dated the 12th of December, a short time after the decree of the supreme court above referred to, in which the accounts of the executors were settled and the amount due each legatee fixed and immediate payment ordered. Schedules are referred to in the decree, which are not annexed, but the inference from the whole document is that the bond and mortgage was not considered as part of the estate.

No proof was produced in support of the allegation that complainant had been restrained by any court in the exercise of his rights and duties as executor.

The bill was filed February 25th, 1897, before the deposit of the interest in the trust company.

*Mr. Benjamin A. Vail,* for the complainant.

*Mr. Edward S. Savage,* for the defendant association.

*Mr. Leroy A. Gibby,* for Mrs. Arkenburgh.

PITNEY, V. C.

I do not find it necessary to determine whether, under the circumstances, the payment of the interest by check to the order of the executor and executrix, and handing it in good time to the attorney of one of them, was a good payment or not, for the reason that I think the complainant is entitled to succeed on the other ground taken, viz., the non-payment of the taxes. I think the excuse set up at the hearing for the delay in that payment is quite insufficient, and fails to bring the case within the principle

Arkenburgh *v.* Lakeside Residence Association.

of the cases in which our courts have relieved parties from the effect of failure to make prompt payment.

The principle governing courts of equity in these cases is fully stated by Chancellor Williamson in *Baldwin* v. *Van Vorst, 2 Stock. 581,* and again by Chancellor Zabriskie in *Spring* v. *Fisk, 6 C. E. Gr. 175.* It has been usual to speak of this class of cases as forfeitures proper, such as when a party, by reason of the failure to pay a small sum, is subjected to the loss of a much larger one, or of land of much greater value—for instance, the amount of the real debt mentioned in the condition of a bond, or where the title to land is lost at law by reason of the non-payment of a sum of money either advanced by way of loan or due upon a contract to sell land. Against such failures equity relieves, almost as a matter of course. But here, as pointed out by Chancellor Zabriskie in *Spring* v. *Fisk, supra,* those elements do not exist. Nothing is lost except the right to a credit, and that depends upon a contractual condition. At the present rate of interest, the right to extend a five per cent. loan can hardly be considered of much value.

It is well settled that mere forgetfulness or oversight will not excuse. *De Groot* v. *McCotter, 4 C. E. Gr. 531 (Court of Appeals)*; *Spring* v. *Fisk, supra*; *Voorhis* v. *Murphy, 11 C. E. Gr. 434; Neale* v. *Albertson, 12 Stew. Eq. 382* (at *p. 386*). In the cases in which the courts have relieved there has been either some inability on the part of the mortgagor to find the mortgagee for the purpose of payment, or some waiver on the part of the mortgagee of prompt payment, or something in the nature of a contract to vary the place and time of payment.

There is here no room for mistake or misapprehension as to when the tax matured, or to whom it should be paid. The corporation defendant is stated to be an association of a few rich gentlemen who purchased the mortgaged premises on speculation. They produced a little income, which was collected by one of their number, a Mr. Blakeley, living at Rahway, and it was his practice and duty to pay these taxes. This, in the present instance, he neglected to do, and no reason or excuse is given for such neglect. The tax bills were sent in December, 1896,

by the complainant to Mr. Savage, one of the owners and the solicitor and, at that time, the president of the corporation. So that complainant is in no wise responsible for their non-payment, and it stands wholly without excuse.

As to the willingness and desire of the majority of the legatees of Arkenburgh to have this loan extended, I think I cannot here take that into consideration. The complainant is, undoubtedly, the acting executor. As matters stood at the hearing, the estate has but a small interest in the mortgage. Much the greater part belongs to the Kinseys. The complainant is, in my judgment, properly treating them as having a controlling voice in the matter of its enforcement. His failure to do so might produce serious results for the Arkenburgh estate.

I think the complainant is entitled to a decree.