WEALTHA A. NEALE

. v.

BENJAMIN ALBERTSON et ux.

A mortgage on leasehold lands contained a provision that the mortgagor would insure the buildings thereon, and assign the policies to the mortgagee, or that the latter might, in the event of the mortgagor's failure to do so, effect

the insurance, and the premium thereon be a lien under the mortgage. There was another provision that if the interest on the mortgage should not be paid for thirty days after it became due, the principal should, at the mortgagee's option, become payable. Nearly five months elapsed after the mortgage had been given before the mortgagor, although frequently requested to do so, procured the policies (they were never delivered to the mortgagee), and after waiting so long the mortgagee insured the premises. The mortgagor and his wife testified that, by a verbal agreement made before the mortgage was executed, the first installment of interest was to be paid out of certain rents then due. This installment was never paid.—*Held,* that the cost of the insurance was a charge on the premises, and collectible under the mortgage, and that the evidence as to the verbal agreement about the interest was inadmissible.

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. J. C. Kennedy* and *Mr. F. P. McDermott,* for complainant.

*Mr. R. F. Stout,* for defendants.

THE CHANCELLOR.

This suit is brought .to foreclose a mortgage for $5,500 and interest, given by the defendants to the complainant, on or about November 6th, 1882, and dated on that day, upon a house and two leased lots in Ocean Grove. The principal, was by the terms of the mortgage, payable on the 6th of November, 1887, and the interest was payable semi-annually. The mortgage contained a provision that if the interest should be unpaid and in arrear for thirty days after it should have become due, the principal, with all arrears, of interest should, at the option of the mortgagee or her legal representatives, be at once due, although the time fixed for payment thereof in the mortgage might not yet have arrived. It also contained a covenant on the part of the mortgagor that he would keep the buildings on the lot insured against loss or damage by fire to an amount approved by the mortgagee, and assign the policy or policies to her ; and that in default thereof, she might effect the insurance, and that the premium or premiums should be a lien on the mortgaged premises, added to the amount of the bond and secured by the mortgage, and be payable on demand, with interest at the rate of six

per cent. per annum from the time of payment of such premium or premiums.

The interest, which, according to the terms of the mortgage, became due on the 6th of May, 1883 (the first payment), was not paid when due, nor within thirty days thereafter, and Albertson did not keep his covenant to insure. According to his own statement, it was not until the 1st day of April, 1883, almost five months after the giving of the mortgage, that policies were issued on his application, in compliance with his covenant. They were issued to him, and made payable, in case of loss, to the complainant, but they were never delivered to her. On the 2d of April, she having failed in her efforts to induce him to keep his covenant, obtained policies herself in his name, with provision that the loss, if any, should be payable to her. That this action on her part was necessary, appears abundantly. On the 30th of March, 1883, he wrote to her that he would not consent to any one placing any insurance upon the property without his consent, and that any so put upon the premises would be worthless, and the premium paid thereon thrown away. He added that the old policies had been expiring, and that he had instructed the agents to endorse one-half of them to her on their renewal, and that when renewed he would send them to her. He added that he took pride in saying his early training had been such as in case of loss to compel him at once to satisfy her claim against the property. At that time she had no security by way of insurance. After receipt of that letter, she obtained insurance as before mentioned. It was necessary for her protection against loss. Immediately after she obtained the policies she wrote to Albertson, stating that she had done so, and demanding payment of the money, $82.50, which she had paid for premiums. It appears that in October, 1883, the company which had issued one of the policies ordered it canceled, and thereupon she took out a new one in another company for the same amount, to run for a year from that time, and paid $15.95 additional premium. The amount for which the property was insured by her was $5,500.

The building covered the greater part, at least, of the lots, and

the lots were held, not in fee, but upon lease.   Under the circumstances, it is clear that she is entitled to recover the premiums paid by her.   Although the bill states that Albertson did not keep his covenant to insure, and that the complainant, in consequence of his failure to comply with his agreement, was compelled to insure, and it asks for payment of the premiums paid accordingly, the answer is silent on that point, and the defendant must therefore be held to have admitted the truth of this statement in the bill.   Apart from this, however, on the proof, the complainant is entitled to recover the premiums paid by her, and to enforce payment under her mortgage.

The bill alleges and the answer admits that there was a default for more than the thirty days in the payment of interest. The answer sets up as ground for relief from the forfeiture that it was agreed by and between the complainant and Albertson, when the mortgage was given, that the interest for the first six months after the date of the mortgage should not be payable until it should have been collected by him out of a certain demand for rent of the mortgaged premises, subsisting and past due when the mortgage was given.   The mortgage was given to secure to the complainant the price of her interest (one-half) in the property on the sale thereof to Albertson, and in consideration of that price he was to have her interest in that rent also.   The complainant absolutely denies the existence of the alleged agreement.   The evidence of it adduced by the defendants is their own testimony on the subject.   By that testimony it appears that the alleged agreement was made before the signing of the mortgage.   Both, indeed, say that it was so agreed, both before and afterwards, but they speak of the same occasion, the time when the mortgage was given, and not of any other day.   It is not claimed that the agreement was made in substitution of the provisions in the mortgage, but that it was understood and agreed that notwithstanding the terms of the mortgage, the first six months' interest should not be payable until Albertson should have collected it from the rent.   Albertson says that he would not sign the bond and mortgage until that agreement was made,

25

and his wife's testimony is substantially to the same effect. The evidence contradicts the mortgage, and is not admissible.

Nor is there any ground for relieving the defendants from the forfeiture. The complainant came to her residence in Asbury Park about the 1st day of May, and remained there during the summer. She was very constantly at home. About the 21st of May she sent a postal card to Albertson stating that she was in her cottage to stay for a week or two, and would be glad to hear from him concerning the interest. He says that shortly after he received the card he called at her cottage to see her, but found no one at home, and that he went again three or four days afterwards with like result. The complainant says that she is confident that she was away from home only one night before the thirty days expired. Albertson, had he been disposed to do so, could have found her to pay her the interest within the thirty days. There will be a decree for the complainant for the principal and interest thereon, and the money paid for insurance and interest thereon.