ABRAHAM LEIPZIGER

*v.*

ALBERT VAN SAUN and ISABEL W. VAN SAUN.

[Submitted May 19th, 1902.   Decided September 20th, 1902.
Filed January 26th, 1903.]

Bill filed August 3d, 1901, by mortgagee against mortgagor, to foreclose mortgage dated January 2d, 1901, to secure payment of $24,000 in one year, with interest payable semi-annually, with usual clause giving right to mortgagee to declare principal due on failure to pay the interest within thirty days after maturity. The right to foreclose, based on failure to pay interest due July 2d, 1901. Defence, usury in taking $1,200 as bonus out of the principal of $24,000 on the delivery of the mortgage.—*Held,* (1) on the evidence the defence of usury is established; (2) bill is prematurely filed, because (*a*) by the terms of the second section of the act suit on a usurious instrument must be based upon the instrument itself and subject to its limitations as to maturity.; (*b*) the statute forbids the accrual of interest and renders so much of the contract as provides for it void; (*c*) the sum of $1,200 retained out of the principal at the delivery of the mortgage must be applied to the payment of interest, if any accrues, hence the mortgagor was under no liability, legal or equitable, to pay interest on July 2d, 1901; (3) *dictum* of Chancellor Runyon in *Mahn* v. *Hussey, 1 Stew. Eq. 546,* disapproved and not followed.

On bill to foreclose a mortgage on land. On final hearing on pleadings and proofs taken before a master. Defence, usury, by reason whereof nothing was due at the date of the filing of the bill.

*Messrs. Cohn & Cohn,* for the complainant.

*Mr. Henry Smith,* for the defendants.

PITNEY, V. C.

The bill, filed August 3d, 1901, is based upon a bond and mortgage, dated January 2d, 1901, to secure $24,000 in one year, with interest payable semi-annually. The bond contains what is

called the thirty-day clause, whereby if the interest is not paid at maturity or within thirty days, thereby the whole principal sum becomes due.

The bill does not set forth this clause in the bond, neither in words nor by its purport and effect. It simply describes, in the usual phraseology, a bond and mortgage to secure $24,000 in one year, with interest payable semi-annually; nor does it allege a default at the end of six months, namely, July 2d, 1901, but simply states, in the language used in a bill on a mortgage long overdue, that the whole of the principal and interest is due, &c.

The answer takes no notice of this omission in the bill, but, after admitting the execution of the instruments, sets out in detail the facts constituting what is claimed to be a usurious agreement, and insists there was no default at the end of six months, and that the complainant is not entitled to maintain his suit.

The usurious agreement set out may be stated thus: That the defendant, being desirous of procuring a loan of $24,000 on his real estate in the city of Paterson, applied to the solicitors of the complainant, Messrs. Maurice and David Cohn, practicing lawyers in Paterson, to procure him such loan; that they undertook to do so from a client in New York City, but stated that the cost to defendant of procuring the loan would be $1,500, of which $1,200 would go to the lender and $300 to themselves for their services and expenses in procuring the loan, making searches, preparing the papers, &c.; that said Cohn & Cohn did procure the loan of $24,000 and deducted therefrom $1,500 for the purposes just stated.

The proofs were adduced before a master, and there the complainant assumed the burden of disproving the defence of usury, without awaiting any proof of it by the defendant. In attempting to make this negative proof the complainant sufficiently exposed, so to speak, his flank as to enable the defendant to bring before the court the true history of the transaction.

The defendant is living upon a rapidly-disappearing remnant of a comfortable inherited fortune and the hope of realizing upon some speculations, which appear not as yet to have borne fruit.

The real estate covered by the mortgage consists of two parcels, one belonging to the husband, the other to the wife, and was already mortgaged for $16,000, with arrearages of interest, and the mortgagee was pressing for his money. The defendants wished to pay this mortgage and several small debts, and to realize some surplus for present and future use.

The husband, in the last week of December, 1900, applied to Messrs. Cohn & Cohn for a loan. They said that they had a client in New York who might loan the amount, but added, according to Mr. Van Saun's account—which I adopt as the more reliable—that the lender would require $1,200 as a bonus on the loan, and they would require $300 for their services in procuring the loan, making the necessary searches, preparing and recording the papers.

On Tuesday, January 2d, 1901, the bond and mortgage were prepared by Cohn & Cohn and executed by the defendants. At the same time Cohn & Cohn prepared and caused Van Saun to execute an agreement as follows:

"In consideration of legal and other services rendered and to be rendered in negotiating a mortgage loan of $24,000 on Apollo Hall, on Van Houten street, and on my residence, corner 15th avenue and 25th street, I, Albert Van Saun, do hereby expressly promise and agree to and with Cohn & Cohn, attorneys-at-law, *to pay them $1,500, said sum to cover fees for professional services, commissions and all expenses incurred by them in making searches of title of both properties, drawing, executing and recording all necessary papers,* and placing the proper revenue stamps on same; said sum of $1,500 to be paid to them upon the receipt by me of the sum of $24,000. The mortgage to be executed by me and wife is to be for one year and at six per cent. per annum.

"Witness my hand and seal the day and year first above written."

They swear that the true agreement was truly set forth in that writing. Nevertheless I believe the testimony of Mr. Van Saun that the Cohns verbally stated to him that $1,200 of the $1,500 was to go to the mortgagee.

The next day, to wit, the 3d of January, 1901, Cohn & Cohn deposited to their credit in bank in Paterson the check of the complainant, drawn on a New York bank, for $24,000, and out of it paid the old mortgage, the taxes, &c., and, after deducting

the sum of $1,500, gave to Van Saun a check for the remainder. On the same day they deposited to the credit of their father, Marcus Cohn, in his bank in Paterson, the sum of $1,500, thereby paying away every cent of the $24,000 received from the complainant. On the same day—January 3d, 1901—Marcus Cohn made the aggregate of his own two bank accounts in two banks in the city of Paterson up to $24,000, and drew two checks, one for $10,000 on one of his banks and the other for $14,000 on the other bank, to the order of Mrs. Pauline Goldstein, of the city of New York, who was the sister-in-law of the complainant, Leipziger, which two checks were deposited on the same day to Mrs. Goldstein's credit in her bank in New York City; and on the same day she drew her check on her bank in New York City to the order of the complainant for $24,000, and he, on the same day, deposited that check to his credit in his bank in time to meet the check which he had given to Cohn & Cohn for the same amount.

Mr. Marcus Cohn, the father of the solicitors of the complainant, in order to make his account good, borrowed several thousand dollars from a bank in Paterson on collaterals.

It does not appear whether or not the $1,500 deposited by the solicitors of the complainant to their father's credit on the 3d of January was necessary in order to make his account up to $24,000.

The defendant had great difficulty in bringing out these facts before the master. He was obliged to subpœna the officers of the bank and to resist motions made to one of the judges of this court to set aside the subpœnas issued for that purpose. In short, he was embarrassed in every imaginable way in proving the case as above stated, but he did succeed in proving it.

Mrs. Goldstein, Mr. Leipziger and Mr. Marcus Cohn were each put on the stand, and each attempted to show that the transactions between them were those of a real loan; that Leipziger applied to Mrs. Goldstein for a loan of $24,000, and gave her his notes for it, and that she applied to Mr. Marcus Cohn, in Paterson, for the loan of $24,000, and that she gave her note to him for it, and that interest was paid upon them, and that some of

Leipziger v. Van Saun.

the principal has been paid; and various facts were stated tending to show that the transactions were real. But, in my judgment, that attempt has signally failed, and I think it is too clear for argument that the whole proceeding was a mere makeshift to cover up a usurious loan made by Marcus Cohn to Mr. Van Saun, and that Marcus Cohn received a usurious bonus upon the loan.

On this pinch of the case an attempt was made by the three Cohns—father and two sons—to show that the $1,500 were in good faith the money of the two sons, and that it was deposited by them to their father's credit for the purpose of enabling him to loan it for them; and various securities were mentioned, and I believe produced, by the father, which he stated represented a loan of this $1,500, or some portion of it, for the benefit of his sons. But a close examination of the testimony satisfies me that all the evidence adduced in that behalf fails to sustain that theory. I do not deem it worth while to go into the details.

I find then, as a matter of fact, that Leipziger was a mere figurehead for the elder Cohn, and that the loan was made by him to Mr. Van Saun at a usurious rate of interest, and that the usury set up by the answer is proven.

The only question which has given me any trouble is as to the effect of the usurious contract upon the present suit. The theory of the defendant is that the effect of the statute is to reduce the loan to $22,500, without interest, so that no interest ever became due on it, and that there was no forfeiture by reason of the non-payment of the interest on the 2d of July, 1901. On the other hand, it is argued that for the purpose of determining when the principal is due the actual terms of the bond must be considered. The instrument itself was destroyed in the great Paterson fire, and we can only refer to the language found in the record of the mortgage, and that, after providing for the payment of the interest at six per cent. semi-annually, contains this clause:

"And it is hereby expressly agreed that should any default be made in the payment of the said interest, or any part thereof, on any day whereon the same is made payable, as hereinbefore expressed, and should the same remain unpaid and in arrear for the space of thirty days, that then and

from thenceforth, that is to say, after the lapse of the said thirty days, the aforesaid principal sum of money, with all arrearage of interest thereon, shall, at the option of the said Abram Leipziger, his executors, administrators or assigns, become and be due and payable immediately thereafter, although the time above limited for the payment thereof may not then have expired, anything thereinbefore contained to the contrary thereof in any wise notwithstanding, as by the said bond or obligation and the conditions thereof, reference being thereunto had, may more fully appear."

The presumption is that this is the language of the bond.

The first section of the Usury act (*Gen. Stat. p. 3703*) declares

"That no person or corporation shall, upon contract, take, directly or indirectly, for loan of any money, above the value of six dollars for the forbearance of one hundred dollars for a year," &c.

The second section, as it stood until the year 1864, rendered absolutely void all instruments upon which a greater rate than six per cent. is taken or reserved.

In 1864 that section was repealed, and the second section of the present act adopted, which provides that in an action at law or in equity to enforce any usurious instrument (describing them) recovery may be had for the amount originally advanced, without interest or costs.

The amount of money actually advanced here was $22,500, or, considering $300 as a legitimate fee to the solicitors for their services, $22,800. Now the instrument provides for the payment of interest at the rate of six per cent. on $24,000. That, it seems to me, is plainly a contract for the payment of more than $6 for the forbearance of $100 for a year. Then $1,200, at least, were "taken," in the sense in which that word is used in the first section of the act, by the lender from the borrower, as interest over and above that provided for in the contract. The result is that the whole transaction, so far as the contract for the payment of interest goes, was expressly forbidden and rendered unlawful by the first section of the act.

Now, it is not necessary to cite authority for the position that no right of action of any kind arises out of an illegal contract of that character—that is, a contract declared to be unlawful by statute.

Further, if we look at the contract in the aspect most favorable for the lender, and treat it as one to pay interest semi-annually on $24,000, the sum of $1,200 retained out of the $24,000 nominally loaned must be credited as a payment in advance on account of interest.

Again, the second section, as we have seen, expressly provided that in any action at law or in equity brought to enforce any usurious instrument, only the amount actually advanced, without interest, may be recovered. This prevents any interest from accruing on such an instrument.

This view disposes of the possible conception that the effect of the statute is to entirely destroy the instrument and give the lender the right at once, without regard to the time fixed for payment in the instrument, to bring suit and recover the amount actually advanced. The statute will not bear such a construction. The only remedy given him is an action on the instrument, and hence it must be subject to the terms of the instrument, except so far as relates to interest.

It follows that the mortgagor was under no obligation, legal or equitable, to pay the interest which by its terms accrued on the 2d day of July, 1901, on the bond and mortgage here in question. His contract so to do was, as we have seen, utterly void.

The effect upon the contract here in question of the two sections of the act just cited, taken together, would seem to be to reduce it in law and in equity to a mere contract to pay a sum of money actually advanced, in one year, without interest.

If the foregoing reasoning is sound, then I am unable to see how the failure of the mortgagor to pay the interest reserved by the contract on the 2d of July can be treated by this court as having the effect of accelerating the time when by its terms the principal sum became due. The part of the contract relied on to produce that effect is absolutely void.

This result is not in accord with what was said by Chancellor Runyon in *Mahn v. Hussey, 1 Stew. Eq. 546* (at *p. 547,* near the bottom). He there uses this language: "If, in fact, no interest whatever were recoverable on the mortgage, that fact would not

Leipziger v. Van Saun.

relieve the defendants from the consequences of the default. The default would still exist, notwithstanding the fact that the interest is not recoverable by suit." But that was a mere *dictum* and not at all necessary to the decision of the case before him. This will appear by a careful examination of the opinion. The mortgage there being enforced was given to secure the aggregate of three separate and distinct loans of different dates; the first two had been secured by separate mortgages; the principal money secured by the mortgage in suit was made payable in five years from date, with interest semi-annually, with the usual clause making it mature in case the interest was not paid promptly. The bill was filed in 1875, more than two years after the date of the mortgage, and was based on the default in the payment of the semi-annual interest secured by it. The first mortgage was given in 1868, five years before the mortgage in suit. Usury was found only in that first mortgage. So that it seems quite probable that the principal of the usurious loan had, by the terms of the usurious mortgage, which are not given in the opinion, been due a long time before the filing of the bill before the court. If this be so, then the question which was dealt with by the learned chancellor was not at all involved, and I am not, therefore, bound by the *dictum* as a decision. But I am bound to consider the reasoning of the learned chancellor with deference and respect, and in so doing I am unable to adopt it.

The result is that the bill in this cause was prematurely filed, and should be dismissed, with costs, without prejudice to another suit. I will so advise.