A. G. GILBERT et al., Appellees, v. A. A. CLARK & COMPANY
et al., Appellants.

**USURY**: Application of Payments—Discharge of Principal. All
1 sums paid as usury will be applied to the discharge of the
principal.

**MORTGAGES**: Rights and Liabilities of Parties—Sale of Mort-
2 gaged Property—Accounting. A lender, sustaining· the relation
of a mortgagee to a borrower, having sold the mortgaged prop-
erty, will be held to account for the value thereof as a mortgagee
in possession.

**ACCOUNT, ACTION ON**: Evidence—Laches. Evidence reviewed,
3 in a suit for accounting by a borrower against a lender, who
had taken property as security on a debt, and held insufficient
to charge the borrower with laches in delaying the bringing of
the suit.

*Appeal from Pottawattamie District Court.*—SHELBY CUL-
LISON, Judge.

JULY 7, 1919.

SUIT in equity for an accounting. The facts appear in
the opinion. Decree as prayed. Defendant appeals.—*Af-
firmed.*

*John M. Galvin* and *W. A. Byers,* for appellants.

*Addison G. Kistle* and *Viggo Lyngby,* for appellees.

STEVENS, J.—The controversy involved in this case is
the result of a series of transactions between the parties.
The defendant A. A. Clark did business in the name of A.
A. Clark & Company.

In December, 1909, plaintiff borrowed $600 of the de-
fendant, executing a note in the sum of $600, with interest
at the rate of 8 per cent. This money was used in making
the initial payment upon the purchase price of certain hotel

property in. Lake View, Iowa, which included the hotel furniture. The purchase price of the hotel was $1,600, and it was purchased on contract. To secure the payment of the $600 note, plaintiffs executed a chattel mortgage upon the hotel furniture and their household goods, and a real estate mortgage upon a large number of lots in Railroad Addition to Council Bluffs, and an undivided interest in a residence property, also in Council Bluffs. Further sums were borrowed from time to time, and, on February 24, 1911, plaintiffs executed their promissory note for $400 to the defendant, to secure the payment of which, and also as additional security for the payment of the $600 note, they executed another chattel mortgage upon the personal property above referred to, and assigned the contract for the purchase of the hotel property to the defendant. On the same date, plaintiffs executed a warranty deed, conveying to the defendant A. A. Clark their undivided one-third interest in three lots in Allison's Addition, and Lot 17 in Railroad Addition to Council Bluffs, Iowa, for an expressed consideration of $1,000. It is the claim of plaintiffs that all of these instruments were executed for, and intended only as, security for the payment of the indebtedness which plaintiffs were owing to defendant. Small sums were later borrowed of defendant, or advanced by it, for the payment of taxes, insurance, and other items for which plaintiffs were liable, and numerous small sums were paid by plaintiffs to the defendant. Defendant also received $717 from the proceeds of the sale of certain of the Council Bluffs property, in partition proceedings. On January 18, 1913, the defendant purchased and took a deed from the holder of the legal title to the hotel property. The sum paid by defendant for the hotel property was $713.10. This was done upon an understanding with plaintiffs. The legal title was held by defendant really as security for the unpaid portion of the purchase price.

For a time after defendant obtained the legal title to the hotel property, plaintiffs paid rent therefor. It is conceded, however, by counsel for appellants that these payments were intended as interest, and several of the loans were usurious. On March 15, 1913, plaintiffs executed a quitclaim deed conveying the hotel property to defendant, and in December of the same year, the defendant sold the hotel property for $1,400. Nothing was paid to plaintiffs at the time of the execution of the quitclaim deed, and at this time, defendant claimed that plaintiffs were indebted to him in a sum in excess of $1,500. On January 3, 1914, defendant paid plaintiffs $200, which, he claims, was in full settlement of all differences between them; and a receipt signed by A. G. Gilbert bearing the above date, and offered in evidence, so states.

The court found that, on March 15, 1913, when plaintiffs executed the quitclaim deed conveying the hotel property to the defendant, they were indebted to him in the sum of $804.41, including interest, and that said settlement was obtained by fraud, and upon the representation that plaintiffs owed the defendant $1,580, which sum included charges for usury; that there was no consideration for said deed, which, in effect, relinquished plaintiffs' equity of redemption in the property conveyed, other than the satisfaction of the indebtedness due from the plaintiffs to the defendant, and that the $200 paid to plaintiffs in March, 1913, represented the alleged amount received by the defendant from the sale of the hotel in excess of the amount due from the plaintiffs, after allowing credits from the other property conveyed to the defendant in the alleged settlement of the same month; that defendant received $1,400 for the hotel property and $80 for certain lots in Council Bluffs sold by him. The court further found that the value of plaintiffs' equity of redemption in the hotel and other property was $1,580, and that defendant was indebted to the plain-

tiffs in the sum of $737.50, and directed him to return the
hotel stock, and reconvey all of the Council Bluffs lots to
which he then had title, to the plaintiffs.

Appellant urges upon this appeal that plaintiffs are
seeking to recover usury voluntarily paid by them; that
the transaction of January 3, 1914, was a good-faith ad-
justment and settlement of all differences
between them of every kind and nature;
and that plaintiffs have been guilty of laches
in the commencement and prosecution of
this suit. No specific payment was made by
plaintiffs of interest, and the court credited all payments
made upon the principal due defendant. This was in har-
mony with the well-recognized rule in equity that all sums
paid as usury will be applied to the discharge of the prin-
cipal. *Smith, Twogood & Co. v. Coopers & Clarke,* 9 Iowa
376; *Hyland v. Phoenix Loan Assn.,* 118 Iowa 401; *Cotton
v. Beatty,* (Tex.) 162 S. W. 1007; *Leipziger v. Van Saun,*
64 N. J. Eq. 37 (53 Atl. 1).

1. USURY: appli-
cation of pay-
ments: dis-
charge of
principal.

Plaintiffs do not seek to recover usurious sums paid to
the defendant, but demand an accounting and judgment
for such sum as is found due them upon the several trans-
actions involved. We are in accord with
the finding of the court below that the quit-
claim deed above referred to was obtained
by fraud; and the court, in its finding and
decree, has awarded the defendant only the
amount actually due, with interest, applying all payments
made upon the principal indebtedness. The defendant, who
sustained the relation to plaintiffs of a mortgagee, having
sold the mortgaged property, should be held to account for
the value thereof, as a mortgagee in possession. *Fort v.
Colby,* 165 Iowa 95.

2. MORTGAGES:
rights and
liabilities: sale
of mortgaged
property: ac-
counting.

Upon the question of the alleged settlement, we are in-
clined to give weight to the finding of the trial court. The

evidence, however, satisfies us that plaintiffs were over-reached by the defendant, and did not understand that the payment of the $200 was intended by defendant as a settlement and relinquishment of their right and interest in all of their property held by him. Defendant occupies the position of one demanding usury of an unfortunate debtor; and if the alleged settlement is permitted to stand, will obtain an unconscionable advantage over them. There is much evidence in the record tending to support the contentions of appellee; but we are not disposed, upon the record before us, to disturb the finding and judgment of the trial court, which does substantial justice between the parties.

It is true that there was some delay on the part of plaintiffs in commencing this suit, but it was the duty of defendant to deal fairly and honestly with them. Having reached the conclusion that the settlement in March, 1913, was obtained by fraud, and in view of all the facts and circumstances detailed in the record, we think plaintiffs should not be charged with laches.

3. ACCOUNT, ACTION ON: evidence: laches.

Further discussion of the questions at issue and involved upon this appeal would be without profit. It is our conclusion that the decree and judgment of the court below must be and it is—*Affirmed.*

LADD, C. J., WEAVER and GAYNOR, JJ., concur.