UNIVERSAL SECURITY COMPANY et al., appellants,

*v.*

AMERICAN PIPE AND CONSTRUCTION COMPANY, respondent.

[Decided January 18th, 1924.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder, who filed the following opinion:

"The House Supply Company, a corporation of this state, changed its corporate name to Universal Security Company and under its new name is one of the complainants in this cause. For convenience the corporation will be referred to herein as the complainant company.

"Prior to and after December 1st, 1919, complainant company was engaged in developing and improving, for residential purposes, various tracts of land, some of which it owned at above date and the balance of which it afterward acquired, all situate on a peninsula extending into the Shrewsbury river, called Gooseneck Point. In the fall of 1919 defendant had a contract with the United States government for dredging a channel in the Shrewsbury river and its hydraulic dredge was engaged on that work. Complainant company, being desirous of having its low lands filled, negotiated with defendant for such work and the result was a written contract in which complainant company is the first party and defendant is the second party, bearing date December 1st, 1919, and containing the following clause:

" 'The second party agrees that it will, immediately after it has completed its contract with the United States government for dredging the Shrewsbury river, New Jersey, place with its dredge one hundred thousand (100,000) cubic yards of hydraulic fill and as much more as is desired by the party of the first part, on the property of the first party and the property immediately adjoining (consents therefor to be obtained by the first party) on Goose Neck Point, opposite Portaupeck, Monmouth county, New Jersey, at the points and to the grade to be indicated by the first party.'

"Henry W. Runyon, an officer of the complainant company, became surety for the performance of his company's obligations under the contract and he is the other complainant in this suit.

"Defendant started to fill the lands on Gooseneck Point on or about September 1st, 1920, and quit November 23d, 1920, maintaining that the work contemplated by the contract was fully completed. Complainant company insists that defendant failed to fully perform its contract, in that it did not fill a tract located on the point, called the Hance tract, to which defendant replies that it did not contract to fill the tract because complainant company neither owned it, nor had consent to fill it, and also because it did not immediately adjoin property owned by complainant company. The complainant company refused to pay for the work performed and defendant commenced suit in the New Jersey supreme court against both complainants herein, to recover about $20,000, in which suit complainants filed a counter-claim for $15,000 damages for failure on defendant's part to fill the Hance tract. On the trial of that action complainants sought to prove that complainant company had control of the Hance tract and that it was not the intention of the parties to the contract to exclude therefrom lands of which complainant company had control and which did not immediately adjoin other lands owned by complainant company and that it was the intention of the parties to the contract that all lands controlled by complainant company while the work was in progress (which included the Hance tract) should be filled by defendant. The trial judge overruled complainants' offer to make such proof on the grounds that parol evidence could not be received to affect or vary the unambiguous terms of a written contract and judgment was rendered in favor of the defendant herein and against complainants herein for upward of $17,000. Complainants have paid defendant the difference between complainant company's claim for damages and the amount of the judgment and have given bond to pay the balance, and defendant has been restrained until the further

48

order of this court, from proceeding to collect the balance of the judgment.

"This suit is brought to reform the portion of the contract quoted, so that it will accord with what complainants maintain was the actual intention and understanding of the parties, but which by mutual mistake is not clearly expressed, namely, that defendant should fill all the lands at Gooseneck Point which complainant company might own or control before defendant had completed the filling work and the complainant's counsel suggests that such reformation can be accomplished by adding at the end of the quoted clause the following words: 'Provided such property shall be owned or controlled by the party of the first part in time to make a continuous fill under this contract.'

"Complainants also pray that defendant may be decreed to have broken the contract as reformed and that the damages resulting from such breach be ascertained and defendant required to credit the same upon its judgment.

"The evidence shows that in or about September, 1919, complainant company sent a letter to defendant's main office in Philadelphia stating its desire to have defendant fill lands on Gooseneck Point, which letter came to the hands of defendant's general superintendent, who sent Judge, who was in charge of the dredging operations for defendant under its government contract, to look over the property of complainant company, ascertain what lands were to be filled, the extent of the fill and the things in general relating to the proposed work; that Judge thereafter, by appointment, met Shera, the president, and Runyon, the vice-president and treasurer of complainant company, at Gooseneck Point; that Judge, Shera and Runyon walked over the property, discussed the enterprise in which complainant company was engaged, and Judge was then informed by Runyon and Shera that their company owned some of the lands and were expecting to acquire all property on the point, except the Jones tract, and that complainant company would obtain permission to fill all tracts on the point not owned by it which it desired filled; that Judge subsequently mailed or delivered to complainant

company a proposed contract, prepared at defendant's office, which contract was changed in some particulars by complainant company, rewritten, signed by the officers of complainant company December 1st, 1919, and mailed or delivered to Judge; that such contract was executed by defendant December 22d, 1919, and a copy delivered to complainant company and is the contract in controversy; that no representative of defendant, other than Judge, had any negotiations or dealings with complainant company prior to the execution of the contract by defendant.

"The question whether the contract should be reformed so that by its terms defendant would be required to fill all lands at Gooseneck Point which complainant company might own or control before defendant had completed its filling work, in its practical application refers to the Hance tract alone, because defendant has filled all other tracts which complainant company desired filled. Complainant company held an option for the purchase of the Hance tract before November, 1920, when defendant claims its work was completed; but it did not actually acquire title until after that date. That tract does not immediately adjoin any property owned or controlled by complainant company, but is entirely separated therefrom by the Jones tract, which complainant company neither owned nor controlled.

"On the subject of reformation of a contract on the ground of mistake, the syllabus in *Giammares* v. *Allemania Fire Insurance Co., 91 N. J. Eq. 114,* sums up the law as laid down by our court of errors and appeals, as follows:

" 'A written contract will not be reformed in equity because of a mistake, in the absence of fraud, unless it is mutual, that is, common to both parties and each under the same mistake as to its terms.

" 'To reform a writing to meet the alleged intent of one party who avers a mistake, when it accurately expresses the agreement as understood by the other, would be as far from expressing the agreement as before and injure one party at the cost of precisely an equal wrong to the other, and therefore to warrant a reformation for mistake, the demonstration

of mistake must be clear and satisfactory, such as produces a strong conviction of the truth.'

"It is therefore necessary for complainants to show that defendant was aware of the desire of complainant company to have all the lands owned or controlled by it at Gooseneck Point filled, whether or not such controlled lands were contiguous to [immediately adjoining] other lands owned by complainant company and concurred in that desire and intended by the contract prepared by it, to express such concurrence.

"Defendant's knowledge of what work complainant company wanted done could only have been acquired from its agent, Judge, because he was the only person connected with defendant who talked with Shera and Runyon on the subject-matter of the contract prior to its execution by defendant. There was no correspondence between the parties prior to the execution of the contract by defendant on the terms and conditions of the contract. Defendant is bound by the statements made by Judge to the extent that the power to bind defendant was conferred on him by the charter, by-laws or corporate action of defendant's stockholders, or board of directors or can be inferred from the powers expressly conferred, or which are incidental thereto, or where the statements made were within the apparent powers which defendant caused Shera and Runyon to believe it had conferred upon him. *Aerial League of America* v. *Aircraft Co., 117 Atl. Rep. 704.*

"Complainants rely on testimony of Shera and Runyon as to statements made by them to Judge and by Judge to them before complainant company had executed the contract, and subsequently and before the contract was executed by defendant. Such testimony, in effect, is that on the occasion of Judge's first visit to Gooseneck Point, the Hance tract was pointed out to him by Shera and Runyon as one of the tracts to be filled and he was told that complainant company was in course of acquiring title to it; that Judge then stated that defendant would fill all lands on the point owned by complainant company and all lands owned by others for which

complainant company could obtain permission to fill, including the Hance tract; that relying upon such statement, complainant company executed the contract December 1st, 1919; that later in that month and before defendant had executed the contract Judge called again on Shera and Runyon at Gooseneck Point and stated that defendant wished to know whether, under the words 'property of the party of the first part,' as contained in the contract, defendant would be expected to fill that part of the Hance tract which lies west of the Seven Bridge road, and, if so, defendant was not willing to execute the contract; that Judge was then informed that only that part of the Hance tract which lies east of the Seven Bridge road was to be filled and he was then taken to the Hance tract and shown the boundaries of that portion of it which complainant company desired filled and he said it was all right and perfectly satisfactory to defendant; that Shera and Runyon then told Judge that if there was any question that the contract did not properly describe the lands which they and Judge understood were to be filled, to return the contract to them to be redrawn and that Judge said it was not necessary to do so, as he had charge of the matter and understood what was to be done and that to have the contract sent back and redrawn would mean great delay in having it executed by defendant; that Shera and Runyon accepted Judge's assurances.

"The evidence on the part of defendant is that Judge was its agent merely for the purpose of ascertaining what work complainant company desired performed and to report that desire to his superiors and a denial that Judge had power or authority to negotiate the terms of a contract with complainant company or to enter into any agreement on behalf of defendant. Defendant further denies that Judge at any time up to the execution of the contract by it reported to defendant the desire of complainant company to have all lands at Gooseneck Point which it might own or control during the progress of the work, filled by defendant, or that he reported to them the desire of complainant company to have the Hance tract

filled.   Defendant also denies that Judge did in fact agree
that the defendant would fill the Hance tract·

"Complainants offered no proof to show that Judge's
authority to act for defendant was fixed or defined by charter,
by-laws or corporate action of defendant's stockholders or
directors; hence to succeed in this suit complainants must
demonstrate that the statements and representations made by
Judge to Shera and Runyon, were within the apparent powers
which defendant had caused Shera and Runyon to believe it
had conferred on Judge; or that defendant sent Judge to see
Shera and Runyon after December 1st, 1919, to obtain further
information as to the property to be filled and that defendant
is bound by the information which Shera and Runyon say
they then gave Judge.

"In response to a letter written by complainant company
to defendant, the defendant sent Judge to see the officers of
the complainant company.   The latter informed Judge as to
what was wanted and asked Judge for a price on the work,
to which Judge replied that he could not name a price, as
that would have to be settled at defendant's office.   Mani-
festly, the price could not be fixed until Judge had reported
to defendant the nature and extent of the work required.   At
this interview Shera and Runyon informed Judge that com-
plainant company did not own the Hance tract, but hoped to
acquire it, and that it did not own and did not expect to
acquire the Jones tract, which completely separated the Hance
tract from the other tracts which complainant company owned
or expected to control, either by consents to fill or by subse-
quent purchase.   It is admitted that the extent of the assur-
ance then given by Judge was that defendant was equipped
to do the work and that there was no representation that de-
fendant would enter into a contract to do it.   Certainly no
agreement was then made by Judge that any lands would
be filled or what the cost per cubic yard would be, and it is
clear that Shera and Runyon understood that Judge was to
report the substance of the interview to his superiors and
that they [Shera and Runyon] would hear later from de-
fendant.   It would seem that no stronger evidence could be

given Shera and Runyon that the extent of Judge's authority was to investigate and report. The next step in the negotiations was that Judge delivered to complainant company a form of contract prepared by defendant setting forth what it proposed to do. My construction of so much of that contract as is material to this issue is that defendant proposed to fill all property at Gooseneck Point owned by complainant company and the property immediately adjoining such owned property, for which complainant company could obtain consents to fill and that the time to which the ownership and consents referred was not the date of the contract, but the date when defendant should commence work, or during the progress of the work. It is not material for present purposes which time was intended. This contract was examined by Shera and Runyon, changed in some particulars, but not as to the property described therein, executed by complainant company and returned to defendant. Assuming, without deciding, that Shera and Runyon had told Judge that they wanted the Hance tract filled and that Judge so reported to defendant, when Shera and Runyon received this form of contract from defendant it was notice to them that defendant did not propose to bind itself to fill that tract unless it came within the description as given by defendant of the property it intended to fill and it would not be embraced within such description unless complainant company became the owner of it during the progress of the work because, if complainant company had simply a consent to fill it, it did not immediately adjoin property owned by complainant. The form of contract was also notice to Shera and Runyon that if Judge had assumed authority to promise that defendant would fill the Hance tract, defendant would agree to fill it only in the event that it came within the description of lands to be filled as set out in the contract. Subsequently and before defendant had executed the contract Judge made his second call on Shera and Runyon. Defendant denies that this interview was by its request or direction and there is no evidence that it was, except that Runyon and Shera say [which Judge denies] that Judge told them he had been sent by defendant,

and consequently defendant cannot be bound on the theory that, having sent Judge to obtain information with respect to the contract, it is chargeable with knowledge of all information he obtained, whether he reported it in full or not. Neither is there any evidence that anything which transpired in this interview was related by Judge to his superiors. Shera and Runyon maintain that at this second interview they again told Judge that they expected defendant to fill the Hance tract and that if the conract as executed by complainant company did not include that tract, to have it returned to them for correction and that Judge replied that he understood the Hance tract was to be filled and that it was not necessary to make any change in the contract to cover that point. The question now is: Had the course pursued by defendant in its dealings with complainant company led Shera and Runyon to believe that defendant had conferred power on Judge to negotiate or settle the terms of a contract, or to modify, alter or interpret the terms as expressed in the contract prepared by defendant and offered to complainant company? I do not think such an inference can be drawn from the testimony, but rather that it should have been apparent to complainant company that Judge had no such power.

"Defendant completed its filling work November 23d, 1920. At that time complainant company had not acquired title to the Hance tract and the option which it held to purchase that tract, cannot be construed as a consent given by the owner or owners thereof that it might be filled under the direction of complainant company and the tract did not immediately adjoin other property owned or controlled by complainant company. Therefore, defendant was under no obligation, by the terms of its contract, to fill that tract, and because it does not appear to my satisfaction that defendant intended to agree to fill it under conditions other than specifically defined in the contract, I cannot find that there was a mutual mistake in the terms of the contract and the bill of complaint must be dismissed."

*Mr. Walter L. McDermott,* for the appellants.

*Messrs. Collins & Corbin,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Fielder.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, GARDNER, ACKERSON, VAN BUSKIRK, CLARK—12.

*For reversal*—None·