On December 30th, 1933, the defendant corporation executed a mortgage to the Lienow Holding Corporation in the sum of $20,000 payable five years after date. The mortgage on the same day was assigned to the complainant. It contained *Page 206 
a provision that if the taxes remained unpaid for sixty days after the same fell due, then the principal sum should, at the option of the mortgagee, its successors and assigns, become due. Taxes for the first half of the year 1934 became due June 1st, 1934. They remained unpaid for more than sixty days thereafter. For those unpaid taxes this action to foreclose the mortgage was instituted.
When the complainant filed its bill, the defendant moved to strike it on the ground that the complainant was no longer a corporation of this state because its charter had been forfeited for its failure to pay its franchise tax. The motion was denied. Subsequently, the complainant caused its charter to be reinstated, and was permitted to file a supplemental bill alleging such reinstatement. The defendant then moved to strike the supplemental bill on the same ground as urged for the dismissal of the original bill; but that motion was denied. The defendant then filed its answer and asserts its failure to pay the taxes is due to the fraudulent representation made by the complainant that it wished to refinance property through the Federal Home Owners Loan Corporation, or one of the federal departmental agencies, but could only do so if the taxes were in arrears; and that in consequence, the complainant requested the defendant not to pay the taxes for the year 1934, with which request it complied.
At the hearing, the defendant sought and obtained permission of the court to file an amended answer setting up as an additional defense to the foreclosure suit, an agreement between complainant and defendant that defendant did not have to pay its taxes for the year 1934 until certain repairs were made on the property covered by the mortgage. The proof indicates, and I find, that the defendant corporation failed to pay its taxes for the year 1934 in accordance with the terms of the mortgage, and that interest on the principal sum is due from December 30th, 1933.
The defendant's allegation that on December 30th, 1933, when title was being conveyed to the defendant corporation, the president, or officers of the mortgagee (which was the grantor in the deed of conveyance) agreed that the defendant corporation need not pay the 1934 taxes until certain repairs *Page 207 
to the mortgaged premises were made by the mortgagee, its successors or assigns, is denied by the complainant's witnesses. The defendant's witnesses are not in accord as to such agreement. The complainant questions the right of the mortgagee's officers to bind it and urge in support thereof, the principle laid down in the case of Rogosin v. City Trust Company of Passaic,107 N.J. Eq. 79, where the court observed as follows (at p. 87):
"Where, as in the case sub judice, the president of the corporation is not expressly empowered to authorize the disbursement of corporate funds, a payment by a bank-depository merely upon the oral direction of the president is without authority and may be recovered by the corporation for its receiver."
In part support of its position, the complainant points to the case of K.S.S. Realty Co. v. Ostroff, 100 N.J. Eq. 128
(affirmed by the court of errors and appeals in 101 N.J. Eq. 771), wherein Vice-Chancellor Fielder, inter alia, said:
"An officer of a corporation has no power, merely by virtue of his office, to alter the provisions of a formal agreement under seal, made for the benefit of the corporation. Such power may be conferred on him by charter or by-laws, or corporate actions of its stockholders or directors, or be within apparent powers which the corporation has caused those with whom its officers has dealt, to believe it has conferred upon him."
The contention of the defendant that the default in the payment of the 1934 taxes was in pursuance of the request and declared plan of the complainant, does not find support in the case ofDerechinsky v. Epstein, 98 N.J. Eq. 79; affirmed, 99 N.J. Eq. 447; 131 Atl. Rep. 922; the court there said:
"The right to foreclose for non-payment of taxes in advance of the due date vests in the complainant, unless the default has been occasioned by the acts or declarations of the complainant.De Groot v. McCotter, 19 N.J. Eq. 531; Spring v. Fisk,21 N.J. Eq. 175; Ackens v. Winston, 22 N.J. Eq. 444; Voorhis v.Murphy, 26 N.J. Eq. 434; Industrial Land Development Co. v.Post, 55 N.J. Eq. 559; 37 Atl. Rep. 892; *Page 208 Arkenburgh v. Lakeside Residence Association, 56 N.J. Eq. 102;38 Atl. Rep. 297; Neale v. Albertson, 39 N.J. Eq. 382; SecurityTrust and Safe Deposit Co. v. New Jersey Paper Board, c.,Manufacturing Co., 57 N.J. Eq. 604; 42 Atl. Rep. 746; Leipziger
v. Van Saun, 64 N.J. Eq. 37; 53 Atl. Rep. 1.
"But the defendant is met here with a complete denial by the complainant; and, as the burden of proof is on the defendant to prove that his failure to pay the taxes was due to the statements of the complainant, and having failed to sustain this burden, he must fail.
"The decree should be for the complainant."
The defendant alleges that the representatives of complainant, prior to and during the passing of the title from the mortgagee assignor to the defendant, made certain statements, representations and agreements, which justified it in not paying the 1934 taxes within the time required by the provisions of the mortgage; but, I conceive, the answer to those allegations is that such statements, representations and agreements, unless reduced to writing, are void and without effect. It is elementary that in order to alter or modify the terms of a valid written instrument, it must be done by an instrument of equal weight or import. It hardly seems necessary to refer to the principles enunciated in Naumberg v. Young, 44 N.J. Law 331, where the court, inter alia, says:
"When the terms of the agreement are reduced to writing, the document itself, being constituted by the parties as the true and proper exposition of their admissions and intentions, is the only instrument of evidence in respect of that agreement which the law will recognize, so long as it exists, for the purpose of evidence. 3 Stark. Ev. 1002. * * *
"The only safe criterion of the completeness of a written contract as a full expression of the terms of a parties' agreement, is the contract itself. When parties have deliberately put their mutual engagements into writing in such language as imports a legal obligation, it is only reasonable to presume that they have introduced into the written instrument every material term and circumstance; and, consequently, all parol testimony of conversations held between the parties, or of *Page 209 
declarations made by either of them, whether before or after, or at the time of the completion of the contract, will be rejected.2 Tayl. Ev. 1035. * * *
"I think it may be considered as settled upon principle, as well as by the weight of authority, that where the written contract purports on its face to be a memorial of the transaction, it supersedes all prior negotiations and agreements, and that oral testimony will not be admitted of prior or contemporaneous promises on a subject which is so closely connected with the principal transaction, with respect to which the parties are contracting, as to be part and parcel of the transaction itself, without the adjustment of which the parties cannot be considered as having finished their negotiations and finally concluded a contract."
In the case of Cohen v. Cohn, 102 N.J. Eq. 245, the court of errors and appeals held:
"The theory upon which that conclusion was based was that it was open to the defendant to prove by oral testimony that the agreement was not to become effective, unless a reconciliation between the defendant and his children had not taken place before the time fixed for the delivery of the deed, and that the proofs showed that this was the arrangement between the parties.
"It seems to us that the learned vice-chancellor misconceived the situation. The defendant's proof did not show that the agreement was not to have life unless the quarrel between the defendant and his children continued to exist at the time of the performance of the contract. On the contrary, the proofs conclusively showed that the contract was a valid and existing one. The contract was actually executed and delivered; it was partly performed by the payment of $2,000 on account of the purchase-money and the acceptance and retention of that payment. It contained a provision that, in case of default in the performance of it by the defendant, he should pay the complainants $500 as liquidated damages, and the defendant at the trial in effect admitted that the contract was a valid and existing one by his admission that thereunder he became liable in that amount because of his default. This being the situation, the attempt in reality was to alter or *Page 210 
vary the terms of an existing written agreement by parol evidence, and this is not permissible under the doctrine ofNaumberg v. Young, 44 N.J. Law 331, and cases following that decision. The effect of these decisions is to hold that parol evidence is not admissible which, conceding the existence and delivery of the written contract, and that it was at one time effective, seeks to nullify, modify, or change the obligation itself, by showing that it is to cease to be effective or is to have an effect different from that stated therein, upon certain future contingencies or conditions, for such evidence varies or contradicts the terms of the writing.
"The vice-chancellor relied upon O'Brien v. PatersonBrewing, c., Co., 69 N.J. Eq. 117, where parol evidence was admitted to show that, at the time the note there in question was given, there was no intention that it should ever be paid by the maker. That case is distinguishable from, and was governed by, a rule different from the one governing the present case where the contract was a valid and existing one. The true distinction is this: The rule excluding parol evidence has no place in any inquiry, unless the court has before it some ascertained paper beyond question binding and effective, and hence parol evidence is admissible to show conditions relating to the delivery and taking effect of the instrument, as that it shall only become effective upon certain conditions or contingencies, for this is not an oral contradiction or variation of the written instrument, but goes to the very existence of the contract, and tends to show that no valid and effective contract ever existed; but evidence is not admissible which conceding the existence and delivery of the contract or obligation, and that it was at one time effective, seeks to nullify, modify or change the character of the obligation itself by showing that it is to cease to be effective, or is to have an effect different from that stated therein, upon certain conditions or contingencies, for this does vary or contradict the terms of the writing. 22 C.J. 1149, and cases there cited.
"Since the oral evidence referred to was legally inadmissible, and since no lawful excuse for failure to perform appeared, we think that the defendant should have been decreed to specifically perform the contract in question. * * * *Page 211 
"The decree below will be reversed, with costs, and the record remitted to the court of chancery for further proceedings in accordance with the views herein expressed."
In Smith v. Colonial Woodworking Co., Inc., 110 N.J. Eq. 418,
it was said:
"In Blum v. Parson Manufacturing Co., 80 N.J. Law 390, Mr. Justice Bergen, in this court, said (at p. 397): `The defendant also assigns for error the exclusion of certain evidence, the first contention being that the trial court ought to have admitted in evidence the written agreement between the parties for the exchange and sale of the respective properties. We think that this contract was properly excluded, for there is nothing in the case appearing in the record which requires us to disregard the well established rule that the law presumes that a deed made and accepted in fulfillment of an executory contract fully express the final intentions of the parties as to so much of the contract as it purports to execute. Davis v. Clark,47 N.J. Law 338; 1 Atl. Rep. 239. The contract in this case was offered "as throwing light upon the construction of these deeds in respect to the covenants that are sued upon in this case." There is no difficulty in construing these deeds, and the presumption is that the final determination of the parties is merged in the deeds.'"
The defendant contends that complainant's counsel agreed to discuss with O'Neill, the president of the complainant company, about his request to the defendant to withhold the payment of the 1934 taxes until an opportunity was had to refinance the mortgage in question through the Federal Home Owners Loan Corporation and that until the attorney could communicate with such person that he would convey his answer to the defendant and would withhold foreclosure proceedings until he was so notified. The attorney Fredman denies that he ever made such a statement. Fredman testified that the complainant corporation gave him no authority to extend the time of paying the 1934 taxes. The defendant has not shown that Fredman had any authority to waive the terms and conditions expressed in the mortgage. Vice-Chancellor Bentley said in the case of Strauss v. Rabe, 97 N.J. Eq. 208;affirmed, 98 N.J. Eq. 700: *Page 212 
"In this connection it should be said in fairness to him that the attorney for the defendants, and now their counsel in this suit, emphatically denies that any such extension was promised by him, but, on the contrary he says that at that time he expressly declined to accede to the complainant's request that additional time should be allowed him for conforming with the terms of his contract. * * *
"When a vendor delivers a written contract for the sale of land to an attorney, and asks the latter to represent him upon the passing of title, without further instructions, and it is known to the purchaser that the contract, by its express terms, has fixed a final, specific day upon which the deed is to be delivered, the purchase money paid, and the other matters in the contract adjusted and concluded, the charter of the agent's powers fixes them, and the purchaser cannot thereafter claim the benefit of any treaty with the agent not found within the contract, either expressly or by necessary implication, unless the act of the agent is either expressly or impliedly ratified by his principal. If it is sought by the purchaser to modify any of the terms of the contract, or impose a new one in any material matter affecting the principal's right, the former must, under the cases just cited, make certain, at his own peril, that the agent's authority is sufficient to permit him to perform such act. * * * It is equally clear that he cannot, unless expressly authorized, vary the terms of payment, or make the mortgage due at a later date, or even an earlier date, under some of the cases, because it is said that his principal may prefer to leave his money invested in an interest-bearing security. Speer v.Craig, 16 Col. 478; 27 Pac. Rep. 891; Siebold v. Davis,67 Iowa 560; 25 N.W. Rep. 778; Dayton v. Buford, 18 Minn. 126;
(Gil. 111); Henry v. Lane, 128 Fed. Rep. 243;62 C.C.A. 625. * * *
"But for the reasons mentioned, it would seem that the answer to the proposition involved in this case is that the agent was without authority to extend the time for passing title between the parties under the circumstances described."
The burden rests with the defendant who alleges that statements were made, and agreements entered into by individuals, the effect of which would be to release the defendant from his *Page 213 
obligation to pay the taxes as provided for in the mortgage, to show they were made by an agent duly empowered by said corporation to bind it; otherwise the representations or agreements are without effect. This, in my opinion, the defendant has not shown. The defendant Wadley stated that sometime in August, 1934, he had a conversation with William O'Neill, in which O'Neill told him that he should not pay the taxes. There is nothing in the record to show that William O'Neill had any authority to bind the Marneil Realty Corporation, the complainant. Nor is there any evidence to indicate that O'Neill was in any way connected with the complainant. The case of LloydW. Casner, Inc., v. Raleigh, c., Hospital, 112 N.J. Law 252, is in point. The court there said:
"The authority for the making of this alleged oral agreement was challenged. The actual making thereof was denied. The trial judge held that the two contracts embodied the arrangements made between the parties, and that the supplementary count, setting up the oral agreement, was not sustained by proofs. He felt controlled by the case of Naumberg v. Young, 44 N.J. Law 331;43 Am. Rep. 380, and directed a nonsuit. The propriety of that disposition of the case is now before us.
"We think the trial judge was right. Mr. Lloyd W. Casner, president of the appellant corporation, himself testified that he regarded the two contracts (Exhibits P-1 and P-2), embodied the arrangements made between his concern and respondent.
"The proofs are barren of any corporate action on the part of the respondent for the making of any parol agreement, or the authorization for any one to make such agreement in its behalf, or the ratification thereof. It is fundamental that an agreement to bind the corporation must be its act, either (1) by its corporate action, or (2) because made by its authorized agent, or (3) by its ratification. Thompson v. Central PassengerRailroad Co., 80 N.J. Law 328; 78 Atl. Rep. 152; Beach v.Palisade Realty and Amusement Co., 86 N.J. Law 238 (see p.241); 90 Atl. Rep. 1118. The trial judge properly disposed of this point." *Page 214 
In the case of Gemmer v. Ritz Realty Corp., 114 N.J. Eq. 84,
the court of errors and appeals held:
"Default was made in the payment of taxes payable June 1st, 1930, December 1st, 1930, June 1st, 1931 and December 1st, 1931.
"The answer admitted the defaults and set up a defense that there had been waiver of defaults by express agreement with one Helena Gemmer, a sister of the executor and a beneficiary under the will of said Conrad Gemmer, deceased, and by the acceptance of interest after default in the payment of taxes.
"The matter was heard by Vice-Chancellor Fielder on motion to strike the answer, supported by affidavits, with counter affidavits on behalf of defendant. The vice-chancellor advised the order striking the answer. The express waiver by agreement with Helena Gemmer is denied by her. The complainant denied the authority of the sister to make any agreement with respect to the matter, and denied all knowledge of any conversation between his sister and anyone acting for the defendant. * * *
"Appellant argues that if the agreement alleged to have been made with Helena Gemmer was without authority, it was ratified by the executor, `when the interest was accepted on account of the mortgage and he having known as far back as June, 1930 and 1931, that there was a default in the mortgage because of taxes and assessment remaining unpaid.' Miss Gemmer not being the agent of the complainant, there could be no ratification of an agreement by a stranger, of which the complainant had no knowledge, by the payment by the defendant of moneys due for interest, and by the acceptance by the executor of moneys due to him for the estate."
In K.S.S. Realty Co., Inc., v. Ostroff, supra, the court said:
"The bill was filed July 3d 1926, to foreclose a mortgage on premises in Jersey City. The due date of the mortgage is August 18th., 1929, but the mortgage contains a provision `that the whole of the principal sum herein expressed shall at the option of the holder of this mortgage, become due after *Page 215 
default in the payment * * * of any tax, water rate or assessment for 30 days.' * * *
"Whether or not there was a thirty-day default in the payment of this water charge, there was such default in the payment of the tax for more than thirty days after the same became payable, which default gave complainant the right to require immediate payment of the principal of its mortgage, unless failure to pay the tax now occasioned by declarations of complainant's authorized agent. Newark Trunk Co. v. Clark, 94 N.J. Eq. 79;118 Atl. Rep. 263; Garfinkle v. Hickey, 96 N.J. Eq. 720;126 Atl. Rep. 428; Derechinsky v. Epstein, 98 N.J. Eq. 79;130 Atl. Rep. 720.
"The defendants Ostroff and Cohen testified that they had obtained bills for the tax and water charge by June 1st, 1926, and that a few days after that date they called on Kanengeiser and told him that they thought the tax assessment too high and desired to appeal therefrom and asked him if complainant would waive the thirty-day default clause and what should they do about paying the water bill; that Kanengeiser thereupon agreed to waive the default clause pending the appeal and told them they could wait to pay the water bill until they paid the tax bill; that they filed a tax appeal at once, which appeal was undetermined when this suit was commenced. Kanengeiser categorically denied such testimony, and, since the burden of proof is on the defendants to prove that their default is attributable to complainant, their defense fails. Derechinsky v. Epstein,supra. Moreover, Kanengeiser had no power by virtue of his office, to alter the provisions of an agreement under seal, made for complainant's benefit. To bind complainant, the defendants must show that he was given such power by the charter, by-laws or corporate actions of complainant's stockholders or directors, or that the agreement he is alleged to have made with defendants was within authority which complainant had caused defendants to believe it had conferred upon him. Mausert v. Feigenspan,68 N.J. Eq. 671; 63 Atl. Rep. 610; 64 Atl. Rep. 801; Universal,c., v. American, c., Co., 95 N.J. Eq. 752; 123 Atl. Rep. 618;Aerial League of America v. Aircraft, *Page 216 c., Co., 97 N.J. Law 530; 117 Atl. Rep. 704; Horner v.Georgia, c., Co., 100 N.J. Law 347; 126 Atl. Rep. 289, and in this their proofs fail.
"There will be a decree for complainants in the usual form."
The observation of counsel for the defendant that the court take judicial notice of the unsettled financial condition prevailing, is answered by the opinion of Vice-Chancellor Stein in the case of Mountain Ridge Building and Loan Association v.M. and W. Holding Co., 115 N.J. Eq. 52, wherein he stated:
"What the defendants by their answer seek is the intervention of the court to stay what is otherwise an orderly foreclosure suit until we shall emerge from the present economic depression and return again to a period of prosperity, at which time the hope is expressed that the value of the mortgaged premises will have increased to such an extent that defendants may sell at a price or obtain a mortgage sufficient to pay and discharge complainant's mortgage.
"Our courts have uniformly declined to interfere with the orderly procedure in foreclosure suits, holding that the defendant therein has no right to obstruct the process of law invoked by the mortgagee for the collection of its debt. Davis
v. Flagg, 35 N.J. Eq. 491; W.D. Cashin Co., v. Alamac HotelCo., Inc., 98 N.J. Eq. 432; Security Building and LoanAssociation v. Grande, 102 N.J. Eq. 320. * * *
"Public welfare demands that no judicial action be taken which would render real estate mortgages less desirable as an investment, a result which might follow from indiscriminate restraints in proceedings of this kind, or by entertaining answers of the sort here interposed. The rights of a mortgagee demand the protection of this court no less than those of the mortgagor. United Building and Loan Association v. Neuman,113 N.J. Eq. 244."
Under the circumstances, I believe that the complainant is entitled to a decree as prayed for. I shall so advise. *Page 217