CLARA SEDDON, complainant-respondent,

*v.*

ANNIE PICKARD et al., defendants-appellants.

[Submitted February 11th, 1927. Decided May 16th, 1927.]

In 1913 complainant, a married woman, contracted to buy a piece of real estate for $19,500. The cash payment required was about $3,000. Of this she paid $2,500 and borrowed her father's credit on a note for $500, which she afterwards paid. To secure him for advances and liabilities, and also as a matter of convenience to her in case of resale, title was taken in his name. The complainant was then, and remained, in possession of the property; her father made further advances from time to time, part of which were repaid. *Held*, that these facts established a resulting trust in complainant's favor, and that it was not changed or terminated by oral communications later held between the parties designating the proposed transfer of the property to complainant as a sale.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Ingersoll.

*Mr. Joseph Beck Tyler,* for the appellants.

*Mr. Clifton C. Shinn* and *Mr. William Elmer Brown, Jr.,* for the respondent.

The opinion of the court was delivered by

PARKER, J.

The bill is filed by a daughter of Joseph Pickard, deceased, against his widow and heirs-at-law, and an ancillary administrator of said Joseph Pickard appointed in this state, apparently, for the purposes of this suit. Complainant prayed a decree requiring defendants to convey to her the legal title to premises in Atlantic City which had been conveyed to Joseph Pickard in his lifetime by an outside vendor, but, as

complainant claimed, under an agreement between her and her father whereby he was to hold the legal title as security for advances made or liabilities incurred by him in completing the purchase, besides other outlays he might make in connection with the property, and also (as developed in the testimony) to enable complainant in case of a resale to dispense with the execution of a deed by her husband, with whom she was on bad terms.

The theory of the bill is not very clear-cut; it partakes of an express trust (unprovable for lack of the writing required by the statute of frauds), a resulting trust, arising from the alleged payment by complainant of a portion of the purchase-money at the time, and additional sums later in liquidation of indebtedness chargeable to the poperty; and, finally, a claim for specific performance of an oral contract by Pickard to convey upon repayment to him of any balances due for moneys advanced by him with interest, supported by actual possession in complainant.

Defendants offered no testimony at the hearing before the vice-chancellor, but moved to dismiss the bill on complainant's testimony. This the vice-chancellor refused, and held the complainant "entitled to the relief prayed for." A reference to a master was ordered, "to state an account." The order of reference is not printed, nor is the testimony before the master, nor his report. The case does not show whether there were any exceptions taken to the report, or what judicial action was had thereon. The appeal is from the final decree, which recites the findings of the report, adopts the balance struck therein, and decrees a conveyance to complainant upon payment of such balance with interest, adjudging "that said complainant is entitled to the specific performance of said contract as prayed."

To us the evidence is persuasive that the property was bought for the benefit of complainant. The title was examined by a title company and the first settlement certificate ran in her name. The contract of sale by the South End Realty Company, the former owner, was not produced, but the testimony indicated that it was lost and that it also ran in the complainant's name. Some point is made of certain

testimony of complainant relating to transactions in which she and her father participated, being incompetent under the deceased party rule. We need not dwell on this as the evidence is sufficient without it. From the documents and the other competent evidence it is clear that complainant was the real purchaser, that her father was substituted on the papers as a matter of convenience, both financially and to avoid the married woman complication; that complainant paid at the settlement about $2,500, plus assumption of the existing mortgages; that her father lent her his credit as maker or endorser of a note or notes, reduced by her payments from time to time over a period of years; that she entered into possession of the property (a small hotel) and sometimes rented it, and ran it herself when she could not rent it, and, as she phrased it, had been in possession practically ever since the time of settlement, *i. e.,* of taking the deed, in 1913. Her father handled the finances and, it is true, made at least one new mortgage to replace one that had fallen due, and paid that off; he paid some of the carrying charges and the complainant paid others. The master found (and apparently his findings were not questioned) that about October 6th, 1919, a balance was struck, showing that on a property purchased for $19,500 in 1913 the complainant owed him $6,000, of which she paid $4,920 in his lifetime. After his death his estate paid off a mortgage of some $6,000 and made other advances which, with interest, brought complainant's indebtedness up to $9,861.62.

The complainant's claim should be sustained on the theory of a resulting trust. At the time of the purchase she paid, apparently, all the cash that was paid, some $2,500 of her own, plus proceeds of a note to which her father lent his name; hence, she was in equity the beneficial owner of the equity of redemption. That status, we conceive, would not change because her father paid a mortgage, for he would acquire the lien of that by subrogation, or because he advanced money on account of the property; for that she would be liable as for money paid to her use, and equity might well award him a lien. However this might be, the status of trustee and beneficial owner, if established at the time of

purchase in 1913, did not change because of advances made by him. And this, we think, is the proper way to view the case. Very likely he considered the property as his own, held to convey to his daughter when matters were squared up between them; and this accounts for his desire for a "settlement" in 1921, a few months before his death. That would have been carried out if the complainant could have raised the money; she fell short by $2,500 on a mortgage loan that was needed, he said the matter might wait till spring, and died before spring came.

The court of chancery properly held complainant entitled to a conveyance on payment of the amount found due the estate of Joseph Pickard, which, as stated, is not questioned here and, apparently, was not questioned below. As to the claim that the price of $18,000 set on it by him in 1919, and complainant's assent to it, constituted a novation, we need only say that as a new contract it would be unenforceable under the statute of frauds and could not operate to alter· the pre-existing relation of trustee and *cestui que trust.* The figure was ascertained by adding to mortgages amounting to $12,000 what may be called a floating debt of $6,000; and the master properly used this $6,000 as the basis of his account; in other words, as an account stated as of October, 1919. The figure of $18,000 was therefore what complainant would have to pay to clear off the mortgages and repay the advances made by her father.

Counsel for appellant points out in his brief, although it is not specified in the petition of appeal, that the decree is erroneous in requiring the administrator of Joseph Pickard to make the deed, instead of his heirs-at-law. To this we agree. It is elementary that at common law an administrator has no control over the real estate of his intestate. Of course, this is not a sale of land to pay debts. The case is not within sections 154 and 155 of the Orphans Court act (*Comp. Stat. pp. 3870, 3871*), nor is it within *placita* 26 and 27 of *Comp. Stat. p. 2267,* relating to executors and administrators with will annexed. The conveyance should be made by the heirs of Joseph Pickard (or more strictly his heir at the common law) and his widow. To this extent

the decree will be modified; in other respects it will be affirmed. As appellants take nothing of benefit by the appeal, respondent is entitled to costs.

*For affirmance*—None.

*For reversal*—BLACK, CAMPBELL, VAN BUSKIRK, HETFIELD, JJ. 4.

*For modification*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, KALISCH, KATZENBACH, LLOYD, McGLENNON, KAYS, DEAR, JJ. 9.