I have before me a real estate mortgage executed by the defendants on March 11th, 1946, which in conformity with the terms of its associated bond provides that the principal *Page 56 
shall be paid "one year after hostilities in the present World War cease and peace is declared thereupon to be computed from 29th day of July 1943 at and after the rate of six percent (6%) per annum, and to be paid semi-annually." The foregoing quotation is precisely transcribed.
The bond and mortgage also contain the stipulations commonly incorporated in such instruments which accord the mortgagees the option to accelerate the maturity of the debt in the event of a stated delinquency in the payment of interest or taxes.
A brief narrative of prior occurrences will serve to exhibit the background of the case. On or about July 29th, 1943, the defendant Bennet Wexler, having received notice of his imminent induction into the United States Army, joined with his wife in the execution of a bond and mortgage to secure the payment to the complainants of an antecedent indebtedness. Those instruments contained the covenant and stipulation which I have quoted.
In August, 1943, the defendant entered the military service, and by reason of some disability he was honorably discharged on July 24th, 1945. Shortly thereafter he and the complainants organized a business corporation in which Wexler acquired one-third of the capital stock. In March, 1946, while the parties were thus associated in business, the defendants found it necessary or desirable to refinance the first mortgage lien upon their premises then held by the Prudential Insurance Company of America. In the accomplishment of that purpose, the complainants canceled their existing mortgage and received from the defendants the bond and mortgage of March 11th, 1946. It was agreed that the substituted bond and mortgage would embrace the same terms as the former instruments. And so it was, even to the pattern of requiring interest to be computed from July 29th, 1943.
Friendships, however, are fragile things and it is not always possible to keep them in constant repair. Discord intervened between these parties. Wexler sought in this court the appointment of a receiver of the business corporation. The complainants retaliated by the institution of proceedings to have the company adjudged to be bankrupt. Thereafter the complainants *Page 57 
demanded payment of the bond and mortgage and inaugurated the present foreclosure suit.
It is said by the defendants that this proceeding is purely the creature of animosity. If so, the answer is that an improper motive cannot defeat the enforcement of a lawful right. Weiner
v. Cullens, 97 N.J. Eq. 523; 128 Atl. Rep. 176.
The so-called acceleration clauses in mortgages are regarded as legitimate contractual stipulations for a period of credit on condition, and a mortgagee has the right to insist upon a strict observance of their terms unless the default of which the mortgagee complains has been attributable to the conduct of the mortgagee himself. Gilbert v. Pennington Trap Rock Co.,135 N.J. Eq. 578; 39 Atl. Rep. 2d 647, and cases therein cited.
In confirming the legal validity of such contractual agreements no line of distinction save in certain exceptional circumstances is drawn between those relating to a default in the payment of interest and those pertaining to a dereliction in the discharge of tax assessments. Cf. Arkenburgh v. Lakeside ResidenceAssociation, 56 N.J. Eq. 102; 38 Atl. Rep. 297; Bergman v.Fortescue, 74 N.J. Eq. 266; 69 Atl. Rep. 474; Weiner v.Cullens, supra; Derechinsky v. Epstein, 98 N.J. Eq. 79;130 Atl. Rep. 720; affirmed, 99 N.J. Eq. 447; 131 Atl. Rep. 922;K.S.S. Realty Co. v. Ostroff, 100 N.J. Eq. 128;135 Atl. Rep. 869; affirmed, 101 N.J. Eq. 771; 138 Atl. Rep. 921; MarneilRealty Corp. v. Twin Brook Realty Corp., 119 N.J. Eq. 205;181 Atl. Rep. 882; 1 Pom. Eq. Jur. (5th ed.) 216, § 439.
It is true that a mortgagee may pursue a course of conduct with respect to such stipulations which will induce a court of equity to excuse the alleged delinquencies. Vide, De Groot v.McCotter, 19 N.J. Eq. 531, 533; Wilson v. Bird, 28 N.J. Eq. 352; Bell v. Romaine, 30 N.J. Eq. 24; Security Trust, c., Co.
v. New Jersey Paper Board, c., Co., 57 N.J. Eq. 603, 607;42 Atl. Rep. 746; Derechinsky v. Epstein, supra; Freund v.Weisman, 101 N.J. Eq. 244, 248; 137 Atl. Rep. 885; Engler v.Buesser, 106 N.J. Eq. 173, 176; 150 Atl. Rep. 576; Schwed v.Budrecki, 110 N.J. Eq. 47; 158 Atl. Rep. 418. *Page 58 
In the present cause it is acknowledged that the defendants have not paid the principal and have never paid any interest thereon. It seems to me to be evident that all of the parties supposed that under the terms of the bond and mortgage neither principal nor interest need be paid until "one year after hostilities in the present World War cease and peace is declared * * *." Under the practical construction ascribed to that clause by the parties themselves, no interest whatever has been collected by the complainants since the inception of the transaction on July 29th, 1943. Therefore I do not regard the non-payment of interest as a justification in equity for the immediate foreclosure of the mortgage.
The covenant of the defendants to pay taxes resides in an independent province. The defendants have always been aware of their obligation to all mortgagees punctually to pay the taxes assessed upon the mortgaged premises. The complainants learned from an official tax search under date of December 12th, 1947, that the quarterly installments of the taxes levied upon the mortgaged premises for the year 1947 had not been paid. The bill in this cause was filed December 23d 1947, and process was served upon the defendants on December 30th, 1947. The defendants eventually paid the past due taxes on January 12th, 1948. The proposed exoneration is that Wexler in 1947 made an application for a war veteran's reduction of $500 from the taxable valuation of the premises. It is disclosed that the desired reduction was officially granted on July 25th, 1947. The defendants express the notion that they were not required to pay the taxes until they received a "corrected tax bill." Not so. See R.S. 54:4-64,N.J.S.A. Unfortunately the defendants have in fact unjustifiably defaulted in the payment of taxes. It is incongruous to infer that the complainants acquiesced in this particular delinquency during the period in which the parties were embroiled in hostile controversy. The burden of proving such acquiescence falls upon the defendants. K.S.S. Realty Co. v. Ostroff, supra. It has not been adequately sustained.
While I am somewhat sympathetic toward the existing situation of the defendants, I cannot ignore the gospel that the *Page 59 
contractual rights of a mortgagee are no less entitled to the recognition and protection of this court than those of the mortgagor. Davis v. Flagg, 35 N.J. Eq. 491; W.D. Cashin Co.
v. Alamac Hotel Co., 98 N.J. Eq. 432; 131 Atl. Rep. 117; UnitedBuilding and Loan Association v. Neuman, 113 N.J. Eq. 244;166 Atl. Rep. 537; Marneil Realty Corp. v. Twin Brook Realty Corp.,supra. The defendants have been remiss in the payment of taxes.
The defendants have entertained a relatively light and inappreciable concern about the satisfaction of their mortgage debt. Their attitude in that regard breaks into view through their contention that it was understood and agreed, they say, that the indebtedness should never become payable until the ratification of formal treaties of peace between the United States of America and the nations against which this country had declared war — an event which may perchance never eventuate.
In consequence of my conclusion that there has been a default in the payment of taxes, I do not feel obliged to declare the interpretation or construction of the words "after the hostilities in the present World War cease and peace is declared." Nevertheless, the point has enticed my inquisitiveness, and it may be advantageous to the members of the bar in analogous cases for me here to supply the following pertinent citations: Malbone Garage v. Minkin, 297 N.Y. 677;76 N.E. Rep. 2d 331; affirming 72 N.Y.S. 2d 327;Hoover v. Sandifur, 171 Pac. Rep. 2d 1009; Samuels v.United Seamen's Service, 68 F. Supp. 461; Michael TuckFoundation v. Hazelcorn, 65 N.Y.S. 2d 387; Jones v.Schneer, 63 N.Y.S. 2d 627; Stinson v. New York LifeInsurance Co., 67 F. Supp. 860; Rupp Hotel Operating Co. v.Donn, 29 So. Rep. 441; Glantz v. Willow Supply Co., 139 N.J. Eq. 523; 53 Atl. Rep. 2d 346; 47 Columbia Law Review 255,265; 168 A.L.R. 170; re our legislative policy, R.S.54:4-3.12f and 3.12h, N.J.S.A.
Decree for complainants. *Page 60