144 N.J. Super. 48 (1976)
364 A.2d 558
CENTURY FEDERAL SAVINGS AND LOAN ASSOCIATION OF BRIDGETON, A SAVINGS AND LOAN ASSOCIATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA, PLAINTIFF,
v.
EDWARD W. VAN GLAHN AND ANNA E. VAN GLAHN, HUSBAND AND WIFE; WAYNE E. JOHNSON, JR. AND JOAN JOHNSON, HUSBAND AND WIFE; FLORENCE ROBERTS, A WIDOW; AND THE UNITED STATES OF AMERICA, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 15, 1976.
*50 Mr. Michael Brooke Fisher for plaintiff (Messrs. Lummis, Kleiner, Moore, Fisher, Pancari & Pagliughi, attorneys).
Mr. William F. Reilly, Jr. for defendants Edward and Anna VanGlahn (Messrs. Waltman & Reilly, attorneys).
Mr. Darrell Fineman for defendants Wayne and Joan Johnson, and Florence Roberts (Messrs. Kavesh, Basile & Fineman, attorneys).
GRUCCIO, J.S.C.
On December 11, 1972 defendants Edward and Anna Van Glahn executed a mortgage and promissory note to plaintiff Century Federal Savings and Loan Association of Bridgeton (Century). The mortgage and note provided, among other things, that "(i)f there be any change in ownership of the mortgaged premises, except by operation of will or intestacy laws, the principal and interest secured by this mortgage shall, at the option of the Mortgagee, become due and payable immediately * * *."
On September 3, 1974 the VanGlahns entered into a long-term contract for sale with defendants Johnson and Roberts, seeking to convey the mortgaged premises. This contract was later recorded in the office of the Cumberland County Clerk. *51 Century, by this foreclosure action, seeks to enforce the "acceleration" or "due on sale" clause which is recited above. The matter is presently before the court on Century's motion for summary judgment.
Essentially, two questions are presented. First, is this acceleration clause valid and enforceable, or is it unenforceable as a penalty or unlawful restraint on alienation? Second, assuming that the acceleration clause is valid, have the VanGlahns violated the clause by their contractual relations with defendants?

I. Validity of Acceleration Clause

It has long been the law in this State that an acceleration clause is a legitimate and valid contractual term, Weiner v. Cullens, 97 N.J. Eq. 523, 526 (E. & A. 1925), not "disfavored in the law or in equity." Poydan, Inc. v. Kiriaki, 130 N.J. Super. 141, 150 (Ch. Div. 1974). Thus, a mortgagee has a right to insist upon strict observance of such a clause unless the default of which he complains is attributable to the conduct of the mortgagee himself. In fact, our courts have even held that an improper motive will not defeat the rights of the mortgagee under the acceleration clause. Glorsky v. Wexler, 142 N.J. Eq. 55, 57 (Ch. 1948).
The validity of an acceleration clause similar to that here was recently upheld in Poydan, Inc. v. Kiriaki, supra. In Poydan a note was secured by a real estate mortgage on a restaurant and by a security agreement covering personalty in the restaurant and its liquor license, and by the pledge of the restaurant stock. The note and mortgage provided for the acceleration of the principal and interest should the ownership of the mortgaged property change. When the mortgagors sold their stock, the mortgagee sought the entire amount remaining on the note and mortgage. The court held that the mortgagee had the right to accelerate the due date of the unpaid balance. The court based its decision on the fact that a mortgagee has an interest in the identity of *52 his debtor. Even though the security may be adequate, an unreliable owner may allow it to deteriorate or even remove or conceal a portion thereof. Id. 130 N.J. Super. at 148. The court also relied on the fact that acceleration of a mortgage by reason of the failure of the mortgagor to abide by the term of the contract "is not a penalty or forfeiture disfavored in the law or in equity." Id. at 150.
In Shalit v. Investors S, & L. Ass'n, 101 N.J. Super. 283 (Law Div. 1968), the validity of an acceleration clause was again accepted by the court. In that case plaintiffs (borrowers) sought to recover a payment which they had made in return for defendant's (lender's) waiver of its right to accelerate payment under a bond and mortgage executed by plaintiffs. Plaintiffs had executed the bond and mortgage in order to finance a multi-unit dwelling. Several years later plaintiffs contracted to sell the premises subject to the mortgage and so advised defendant. The parties entered into negotiations for the waiver of defendant's right to accelerate and agreed on an amount, which plaintiff paid. Plaintiff later started suit for the return of the premium.
The court concluded that receipt of a premium in exchange for waiver of the acceleration privilege was within the proper discretion of the mortgagee. Accordingly, since it is proper to accept a premium in place of the acceleration, the acceleration itself necessarily must be proper.
Furthermore, the court phrased the issue as defendant's right to call in the full amount of the principal and likened it to the right of a bank to continue the investment of its funds in that particular mortgage. See Bloomfield Savings Bank v. Howard Stainton & Co., 60 N.J. Super. 524 (App. Div. 1960). In Bloomfield the mortgage did not provide for prepayment. Thus, the mortgagee bank was not required to accept prepayment. The court further stated that that the bank's acceptance of prepayment only upon payment of an additional penalty was neither usurious nor fraudulent. Considering the development of our case law, then, it is apparent that the acceleration clause in this case *53 is a valid term of the contract between the VanGlahns and Century.
One further point is raised by defendants, namely the impropriety of Century's motive for the acceleration. Defendants claim that Century is not interested in preserving its security but seeks only to secure an increase in the rate of interest. This claim is accepted by the court for the purpose of this motion, although it might be noted that there is some suggestion that the mortgagee has had "trouble" with the purchasers before.
As stated above, an improper motive does not necessarily invalidate the foreclosure action. Glorsky v. Wexler, supra. However, I need not explore the present-day validity of this principle since I hold that the institution of a foreclosure action in order to maintain the portfolio of the Association at current interest rates is eminently proper.
Defendants rely primarily on Tucker v. Lassen S. & L. Ass'n, 12 Cal.3d 629, 116 Cal. Rptr. 633, 526 P.2d 1169 (Sup. Ct. 1974). In that case the court dealt with an acceleration clause which the lender claimed became effective upon the entry of the mortgagor into an installment land contract. The court found that such a clause may be enforced, as in La Sala v. American S. & L. Ass'n, 5 Cal.3d 864, 97 Cal. Rptr. 849, 489 P.2d 1113 (Sup. Ct. 1971),[1] only when the mortgagee can show a threat to his security resulting from the installment contract. In Tucker the mortgagee's only concern was in maintaining its portfolio at the current interest rate. There was no suggestion that the security value of the mortgaged property would be lessened by the transaction. Accordingly, the court would not allow the foreclosure, holding that the Association's purpose in maintaining its portfolio at the current interest rate was insufficient.
*54 It must be realized in this respect that the California result flows from a specific statute forbidding unreasonable restraints on alienation. Cal. Code § 711. New Jersey has no such statutory authority nor, as recited above, does our case law prohibit this "restraint" as unreasonable.
I am mindful that N.J.S.A. 17:12B-12 states that the purpose of a savings and loan association is for the promotion of "thrift, home ownership and housing or otherwise investing funds in accordance with the provisions of this act." Likewise, the purpose of this federal association is to provide a thrift institution in which people may invest their funds and which provides for the financing of homes. North Arlington Nat'l Bank v. Kearny Federal S. & L. Ass'n, 187 F.2d 564 (3rd Cir.1951), cert. den., 342 U.S. 816, 72 S.Ct. 30, 96 L.Ed. 617 (1951). As noted above, this effort to protect and preserve the assets of the Association and thus fulfill its purpose may be better accomplished by "accelerating" the balance (or accepting a premium in lieu thereof) when a transfer of the mortgaged premises to a third party has been effected. Shalit v. Investors S. & L. Ass'n, supra. Calling a loan in order to get the full benefit of current interest rates is a legitimate and reasonable business practice  one which protects the Association members and their savings investments as well as fulfilling the statutory purpose of the association.
Even more persuasive are the equities of the situation. This mortgage may be prepaid subject to the provisions of N.J.S.A. 46:10B-2. Thus if, in this case, the interest rate had fallen, the borrower would have been privileged to refinance his debt elsewhere at the lower rate and pay off the loan. The borrower may repay the entire debt without penalty three years after the date of the mortgage, although slight penalties prior to that date are assessed. If prepayment should occur under this provision, the lender has its money to loan, but at a less favorable rate of interest. On the other hand, if the money had been loaned at a lower rate of interest (as it was here), the lender risked losing the benefit *55 of a later increase in rates. The one protection against these contingencies which would give plaintiff the benefit of his bargain is an acceleration clause such as that employed here. See Gunther v. White, Tenn., 489 S.W.2d 529 (Sup. Ct. 1973); Malouff v. Midland Federal S. & L. Ass'n, Colo., 509 P.2d 1240 (Sup. Ct. 1973), and Cherry v. Home Savings S. & L. Ass'n, 276 Cal. App.2d 574, 81 Cal. Rptr. 135 (D. Ct. App. 1969).
By the enforcement of the acceleration clause in this case, Century seeks only to protect itself and its members from the inflationary and deflationary conditions of the money market. Such a motive is neither unlawful nor improper. The officers and directors of a savings and loan association have a fiduciary obligation to their depositors to obtain the best lawful yield of their mortgage portfolio. This court will not interfere with the discretion of the officers and directors in these matters unless such discretion is grossly abused.
Furthermore, "equity should not depart from the law which requires it to enforce valid contracts and strike down the acceleration option simply because its exercise will let the [lender], not the [borrower], make the profit. * * *" Gunther v. White, supra at 489 S.W.2d at 532. The issue here is who will reap the profit. The VanGlahns seek it, by selling the property at a higher price, since its value is enhanced by the 7 1/2% mortgage. On the other hand, Century seeks the additional profit which it would gain by loaning the principal at the current rates. The contractual rights of a mortgagee are no less entitled to the recognition and protection of the court than those of the mortgagor. Glorsky v. Wexler, supra 142 N.J. Eq. at 59. Accordingly, the "motive" of the mortgagee in this case, namely, accelerating the balance due so that it may receive higher interest rate on same when it is subsequently loaned, is proper, and the balance due may be accelerated.

*56 II. Change of Ownership

Having found, then, that the acceleration clause in issue here is both valid and properly enforced, I need only determine whether the long-term contract between the VanGlahns and Roberts and Johnson effects a "change in ownership" of the mortgaged premises. This long-term contract has effectively shifted the equitable title to the property to Roberts and Johnson, even though legal title still rests in the VanGlahns.
Whether the transfer of equitable title alone is a "change of ownership" sufficient to invoke the acceleration clause is an issue of first impression in New Jersey. It should be noted, however, that our courts recognize that a contract for the sale of land operates as an equitable conversion. Thus, the purchaser, in the contemplation of equity, becomes the real owner. Coolidge & Sickler, Inc. v. Regn, 7 N.J. 93 (1951).
For example, in this case, should there be damage to the property, Roberts and Johnson would suffer the loss. Indeed, they have recognized as much by obtaining insurance on the property. They have possession and control of the premises in question. Accordingly, they are recognized, in equity, as the real owners of the property. I conclude then, that the execution of the contract for sale works a change in ownership sufficient to invoke the acceleration clause.
The same result was reached in Mutual Federal S. & L. Ass'n v. Wisconsin Wire Works, 58 Wis.2d 99, 205 N.W.2d 762 (Sup. Ct. 1973). There the original parties entered into a mortgage which provided that the mortgagee must consent to a conveyance of the mortgaged premises or else the whole amount would become due and payable at once. In spite of the provision, the mortgagor entered into a land contract for the property without consent. The foreclosure action followed. The court described the "land contract" as transferring equitable title to the vendee, while the vendor-mortgagor retained the legal title, a situation analogous to that here.
*57 The trial court found that term "convey" was ambiguous, is not being apparent from the mortgage that a "conveyance" referred to the equitable as well as the legal estate. The holding was reversed by the Wisconsin Supreme Court. That court found that the term "convey" was clear and that it applies to any transfer of title to the mortgaged property, whether such transfer be legal or equitable. 58 Wis.2d at 104, 205 N.W.2d at 766. Since the land contract conveyed equitable title, the acceleration clause would permit foreclosure in the absence of any equitable defenses, notwithstanding the fact that the mortgagor still held the legal title.
The court in Tucker v. Lassen S. & L. Ass'n, supra, cited by defendants, concurs in this resolution of this particular issue. The court there stated that the installment contract transaction "is clearly covered by the terms of the `due-on clause.'" That clause referred to the transfer of any interest. Thus, the equitable interest in the property which was obtained by the purchaser under the long-term installment contract was of sufficient quality to bring the contract within the clause.
As stated above, in this State the term "change of ownership" quite clearly includes the transfer of equitable ownership. Accordingly, a change of ownership within the contemplation of the parties has occurred here.
From the undisputed facts, I conclude that (1) the acceleration clause is valid and enforceable; (2) the motive for accelerating the balance of the loan, namely, to take advantage of current interest rates, is proper, and (3) a long-term contract which transfers equitable title is a "change of ownership" sufficient to invoke the acceleration clause.
Plaintiff's motion for summary judgment is granted.
NOTES
[1] This case dealt with a "due-on encumbrance" clause  a clause which allowed the mortgagee to accelerate the balance due if the mortgagor sought to further encumber the property.