## Society for Savings *v.* William F. Bragg, Jr., et al.

Superior Court      Judicial District of      File No. 181825
                        New Haven

Memorandum filed October 16, 1981

*Leventhal, Krasow & Roos,* for the plaintiff.

*Mascolo, Rinaldi, Zipoli & Buckley,* for the named defendant.

*Ginsberg, Ginsburg & Alderman,* for the defendant Salvatore J. Nicotra.

*Sid M. Miller,* for the defendant Eugene Roth.

*Murtha, Cullina, Richter & Pinney,* for the defendant First Federal Savings and Loan Association of Waterbury.

LEVINE, J. The present action has been brought by the plaintiff, Society for Savings, to foreclose a real property mortgage. The parties have stipulated to the following facts:[1] The plaintiff is a mutual savings bank, chartered under a special act. On January 11, 1978, the defendant Bragg was indebted to the plaintiff, as evidenced by his promissory note for $650,000. To secure this note, Bragg executed a first mortgage deed to the plaintiff on a twenty-seven acre parcel of land located in the town of Cheshire. The said parcel, known as Highland Manor Apartments, was improved with fifty-six apartments. Contained in the Bragg mortgage deed is a so-called "due-on-sale" clause which reads as follows: "If title to the mortgaged premises shall vest in anyone other than the grantor, the whole of the principal sum and interest shall immediately become due and payable without notice at the option of the grantee."

In late 1978, and early 1979, the defendant Bragg and the defendant Nicotra requested the plaintiff to refinance the mortgaged premises with a new mortgage in a larger amount at current interest rates, or to allow the assumption of the existing mortgage by the defendant Nicotra at the stated or at an increased interest rate. The plaintiff refused to accept these proposals, but agreed to allow the mortgage debt to be paid off with a prepayment penalty of two points (2% of the then principal balance).

The defendant Nicotra is a real estate investor, who has been active in the real estate business for a number of years. He is the owner of several apartment complexes, and has a net worth exceeding $1,000,000. Further, he has several mortgage loans on multi-family residential real estate, all of which are in good standing. A number of these loans contain due-on-sale clauses.

---

[1] The defendant Roth has filed a disclaimer to the stipulation since the second mortgage, which he holds, is not presently in issue.

On February 16, 1979, the defendant Bragg, as seller with Highwood Manor Associates, a limited partnership acting by Bragg as its general partner, and the defendant Nicotra, as buyer, executed a purchase agreement covering the subject premises, which was recorded on February 20, 1979. The purchase price was $990,000. Closing statements were subsequently executed. The tentative closing date was May 1, 1987, some eight years later.

Pursuant to the purchase agreement, the defendant Nicotra exercised various incidents of ownership relative to said premises, including, but not limited to, full possession, control of management and operation, the right to all rental income, the responsibility for all expenses, the risk of loss by fire or other casualty, compliance with all laws, ordinances, rules and regulations, and liability for noncompliance, acceptance of the condition of the premises as of February 15, 1979, the sole right to a depreciation deduction for federal income tax purposes, and the right to sell his "interest" in the property, which right Nicotra attempted to exercise at various times.

Upon learning of the execution and recordation of the purchase agreement, the plaintiff exercised its option to accelerate the debt under the due-on-sale clause on April 17, 1980. Thereafter, the defendant Bragg tendered the monthly mortgage payments, but the plaintiff refused to accept them. The entire mortgage debt has remained unpaid, notwithstanding the plaintiff's demand for full payment. As of April 9, 1981, the debt due consisted of $634,058.84 principal, and $60,116.70 interest.

The plaintiff asserts in its complaint that the defendant Bragg's failure to pay the entire amount of the mortgage debt entitles it to a judgment of foreclosure. The due-on-sale clause of the mortgage deed allows the plaintiff to accelerate the debt, "[i]f title to the mortgaged premises shall vest in anyone

other than the grantor . . . . " The plaintiff contends that the purchase agreement served to divest Bragg of all of his title to the premises. The plaintiff urges that it holds "legal title" to the premises by virtue of the mortgage.

The defendants Bragg and Nicotra have filed substantially similar answers and special defenses. They have denied those paragraphs of the complaint which assert a vesting of title in Nicotra by virtue of the purchase agreement, which would constitute a violation of the due-on-sale clause, and further, have raised this objection as a special defense. Second, the defendants claim that the due-on-sale clause is "invalid and unenforceable" as a matter of law for the following reasons: it is an unreasonable restraint on the alienation of property; enforcement of the due-on-sale clause constitutes a penalty, unenforceable in equity; the plaintiff has failed to demonstrate either impairment of its security, or economic hardship; and the acceleration of the entire unpaid balance does not meet the legitimate business interests of the plaintiff.

The defendant Bragg, in a special defense, further charges the plaintiff with laches, in that it accepted mortgage payments from the defendant Nicotra for over one year after first acquiring knowledge of the agreement between Bragg and Nicotra. This contention was not pressed in the brief of Bragg, and is therefore deemed to have been abandoned.

The instant due-on-sale clause authorizes acceleration of the entire debt, "[i]f title to the mortgaged premises shall vest in anyone other than the grantor . . . . " It is the plaintiff's contention that the purchase agreement served to divest the grantor, Bragg, of his title in violation of the due-on-sale clause, thereby permitting acceleration.

At the outset, it must be noted that Connecticut follows the "title theory" of mortgages. Upon execu-

tion of the mortgage deed, legal title vests in the mortgagee. *City Lumber Co. of Bridgeport, Inc.* v. *Murphy,* 120 Conn. 16, 19, 179 A. 339 (1935). Accordingly, legal title to the premises vested in one other than the grantor, by virtue of the mortgage deed. In turn, Bragg, the grantor, retained equitable title, i.e., the equity of redemption. *State* v. *Stonybrook, Inc.,* 149 Conn. 492, 496, 181 A.2d 601 (1962).

The focal issue is whether the purchase agreement serves to divest the defendant Bragg of his equitable title. The defendant Nicotra argues that both legal and equitable title must vest in him, as vendee under the purchase agreement, in order to make the due-on-sale clause operative. This is simply a misreading of the present clause. The due-on-sale clause is breached when the grantor loses his title. There is no express requirement that both legal and equitable title must vest in a third party as a condition of asserting a violation thereof.

The purchase agreement provides that "the Seller [Bragg] shall convey to the Buyer [Nicotra] a good marketable title to said premises by Warranty Deed, free and clear from all encumbrances," except those noted. (The mortgage from Bragg to the plaintiff is not listed as an encumbrance upon the property). As noted, the closing date is May 1, 1987, or earlier, if the parties agree.

The purchase agreement appeared at first blush to be merely an executory contract for the sale of the land. One unusual element therein was the proviso that the closing might not take place for some eight years. In any event, upon execution of the agreement, and consonant with the equitable conversion rule (discussed below), Bragg transferred his sole title "residual"— his equitable title—to Nicotra. This left Bragg essentially with nothing but personalty, i.e.,

either a claim against Nicotra for faithful performance, or for Nicotra's breach. The purchase agreement was hence sufficient to activate the due-on-sale clause of the mortgage to the plaintiff.

Contrary to the defendants' suggestion, the purchase agreement does not mandate the conclusion that it is purely a lease, and no more. The agreement allows the seller (Bragg) to bring a summary process action to recover possession upon Nicotra's default. General Statutes § 47a-23, governing a summary process action, however, is now broad in scope. It merely states that an "owner" who wishes to recover possession from "one [who] originally had the right or privilege to occupy such premises but such right of privilege has terminated," shall serve the occupier with a notice to quit possession. Thus, the summary process action is available to owners, as well as lessors, against any occupier of the premises, such as Nicotra.

As the agreement was structured, technical transfer of "title" will not formally occur until a final closing between Bragg and Nicotra. The plaintiff argues, however, that under the doctrine of equitable conversion the court should find that Bragg has already transferred his title by virtue of the purchase agreement. This doctrine "is an application of the principle that equity regards as done what ought to be done." *Connecticut College for Women* v. *Groton,* 123 Conn. 196, 200, 193 A. 873 (1937). The court agrees that equitable conversion is applicable herein.

Accordingly: "Under the doctrine of equitable conversion . . . the purchaser of the land under an executory contract is regarded as the owner, subject to the vendor's lien for the unpaid purchase price, and the vendor holds the legal title in trust for the purchaser. 55 Am. Jur. 782 [Vendor and Purchaser § 356]. The vendor's interest thereafter in equity is in the unpaid purchase price, and is treated as person-

alty; *Bowne* v. *Ide,* 109 Conn. 307 [147 A. 4 (1929)]; while the purchaser's interest is in the land and is treated as realty. 18 C.J.S. 49 [Conversion § 9]." *Cooper* v. *Polayes,* 19 Conn. Sup. 353, 354–55, 113 A.2d 599 (1955). See also *Lanna* v. *Greene,* 175 Conn. 453, 461, 399 A.2d 837 (1978) ("Under the doctrine of equitable conversion a contract for the sale of land vests equitable title in the vendee."); 8A Thompson, Real Property (1963) § 4447, pp. 273–75. If the doctrine is applied here, therefore, Bragg no longer retains a realty interest in the mortgaged premises as a consequence of the purchase agreement.

The defendants argue, however, that by enacting General Statutes § 49-92a the General Assembly has abrogated the doctrine of equitable conversion. Such a contention lacks substance. Section 49-92a creates a purchaser's lien in a realty sales contract to the extent of the deposit paid.[2] Examination of the legislative history of § 49-92a reveals that it was designed for a limited and specific purpose, i.e., "to protect the person who puts down his purchase money for a home and finds that the builder has absconded or gone sour in some way." 11 S. Proc., Pt. 6, 1965 Spec. Sess., p. 1968 (remarks of Sen. Falsey); see also 11 H. R. Proc., Pt. 5, 1965 Spec. Sess., pp. 2403, 2404 (remarks of Rep. Satter and Rep. Ratchford). Absent any express provision therein to modify or invalidate the longstanding doctrine of equitable conversion,

---

[2] "[General Statutes] Sec. 49-92a. PURCHASER'S LIEN. PRECEDENCE. FORECLOSURE. A purchaser's lien is created for the amount of the deposit paid pursuant to and stated in a contract for the conveyance of land by the recording of that contract in the records of the town in which the land is situated, provided the contract is executed by the owner and by the vendee of the land, witnessed and acknowledged in the same manner as required for a deed for the conveyance of land, and describes the particular land to which it refers. That purchaser's lien shall be prior to any other liens and encumbrances originating after the contract is recorded. A purchaser's lien may be foreclosed in the same manner as a mortgage. Transfer of title of the land to the vendee constitutes a release and discharge of the lien."

§ 49-92a cannot be so interpreted. "A statute should not be construed as altering the common-law rule, farther than the words of the statute import, and should not be construed as making any innovation upon the common law which the statute does not fairly express. *Dennis* v. *Shaw,* 137 Conn. 450, 452, 78 A.2d 691 [1951]; see *Shaw* v. *Railroad Co.,* 101 U.S. 557, 565, 25 L. Ed. 892 [1879]; 82 C.J.S., Statutes, § 393." *Skorpios Properties, Ltd.* v. *Waage,* 172 Conn. 152, 156, 374 A.2d 165 (1976).

The due-on-sale clause authorizes acceleration of the debt, "[i]f title to the mortgaged premises vests in anyone other than the grantor . . . ." "Title" is defined as "the right to, or ownership in, land." *Andrews* v. *New Britain National Bank,* 113 Conn. 467, 472, 155 A. 838 (1931); *Liberman* v. *Beckwith,* 79 Conn. 317, 321, 65 A. 153 (1906). By virtue of the mortgage deed, legal title to the premises was conveyed to the plaintiff. Further, equitable title subsequently vested in Nicotra as a result of the purchase agreement by application of the doctrine of equitable conversion. Hence, there was a "vesting of title" in Nicotra permitting the plaintiff to accelerate the principal and interest under the due-on-sale clause of its mortgage.

In the highly relevant case of *Century Federal Savings & Loan Assn.* v. *Van Glahn,* 144 N.J. Super. 48, 56–57, 364 A.2d 558 (1976), the court squarely held that a long-term contract for the sale of real estate, which transfers equitable title and allows the vendee to take possession, is a "change of ownership" sufficient to invoke a mortgage acceleration clause. The *Century* court cited with approval an identical ruling in *Mutual Federal Savings & Loan Assn.* v. *Wisconsin Wire Works,* 58 Wis. 2d 99, 205 N.W.2d 762 (1973).

Equitable conversion, in the present case, is not merely a hypertechnical invocation of a flimsy legal

fiction. Rather, it truthfully and accurately summarizes the blunt realities and effects of the purchase agreement between Bragg and Nicotra. See *Williams* v. *First Federal Savings & Loan Assn.*, 651 F.2d 910, 918–20 (4th Cir. 1981).

The defendants Bragg and Nicotra next contend that the plaintiff should not obtain a judgment of foreclosure based solely on the due-on-sale clause, since that clause is a "restraint on alienation," and is therefore unenforceable. The second special defense of Bragg urges that the due-on-sale clause is unenforceable, per se, since it constitutes a restraint on alienation. Nicotra takes a somewhat different tack. In his second special defense he submits that the due-on-sale clause is invalid in that it is an "unreasonable" restraint on alienation. This court has concluded that the due-on-sale clause is not a restraint on alienation based on the reasons set forth below. Next, even if that clause could be said, arguendo, to constitute a restraint on alienation, its terms and conditions are reasonable and can be enforced herein.

Some jurisdictions, in addressing the issue of the validity of a due-on-sale clause, have held that it is a restraint on alienation. See, e.g., *Tucker* v. *Pulaski Federal Savings & Loan Assn.*, 252 Ark. 849, 853–58, 481 S.W.2d 725 (1972); *Malouff* v. *Midland Federal Savings & Loan Assn.*, 181 Colo. 294, 301, 509 P.2d 1240 (1973); *People's Savings Assn.* v. *Standard Industries, Inc.*, 22 Ohio App. 2d 35, 37, 257 N.E.2d 406 (1970); *Continental Federal Savings & Loan Assn.* v. *Fetter*, 564 P.2d 1013 (Okla. 1977). This court disagrees. It finds that such unfavorable holdings rest on an insufficient analysis of this issue. It approves of the following recent statement by the Supreme Court of Nebraska: "We believe that the error committed by most jurisdictions in deciding this matter is their willingness to assume that a 'due on sale' clause is a restraint on alienation and that the

only issue is reasonableness. In our view, the 'due on sale' clause is not a restraint on alienation as that concept is legally defined." *Occidental Savings & Loan Assn.* v. *Venco Partnership,* 206 Neb. 469, 471, 293 N.W.2d 843 (1980).

Under Connecticut law, a restraint on alienation is a device which, "either forbids any conveyance to any one . . . or limits a conveyance to a designated class of persons, or reserves to the grantor, his heirs and assigns an unlimited option to repurchase . . . ." *Harris* v. *Pease,* 16 Conn. Sup. 13, 15 (1948), aff'd, 135 Conn. 535, 66 A.2d 590 (1949). Clearly, the due-on-sale clause in this case does not contain any of these restrictions. It merely authorizes acceleration of the mortgage debt upon the mortgagor's transfer of title. Similarly, the due-on-sale clause does not fall within the general definition of a restraint on alienation, as contained in 4 Restatement, Property § 404: "(1) A restraint on alienation, as that phrase is used in this Restatement, is an attempt by an otherwise effective conveyance or contract to cause a later conveyance (a) to be void; or (b) to impose contractual liability on the one who makes the later conveyance, when such liability results from a breach of an agreement not to convey; or (c) to terminate or subject to termination all or part of the property interest conveyed." It is readily apparent that the due-on-sale clause herein is not a "restraint" under either paragraph (1) (a) of the Restatement, since it does not invalidate the purchase agreement between the defendants, or under paragraph (1) (c) of the Restatement, since it does not create a forefeiture of the defendant Bragg's (mortgagor's) interest. Moreover, the due-on-sale clause cannot be described as "an agreement not to convey" the premises. Therefore, paragraph (1) (b) of the Restatement is not controlling. "One need simply read the various subparts of § 404 to conclude that a 'due on sale' clause does not, in any manner, bring about any of the effects noted there and cannot,

therefore, be a direct restraint on alienation." *Occidental Savings & Loan Assn.* v. *Venco Partnership*, supra, 472.

The defendants' ancillary contention is that, as a practical matter, the due-on-sale clause impedes the alienation of property to some extent, and is, therefore, invalid as an *indirect* restraint. "An indirect restraint on alienation arises when an attempt is made to accomplish some purpose other than the restraint of alienability, but with the incidental result that the instrument, if valid, would restrain practical alienability." Simes & Smith, The Law of Future Interests (2d Ed. 1956) § 1112, p. 5; see also Volkmer, "The Application of the Restraints on Alienation Doctrine to Real Property Security Interests," 58 Iowa L. Rev. 747, 774 (1973). It cannot be said that a due-on-sale clause literally "prevents" the transfer of real property interests. As noted by one court, "the due-on-sale clause is part of an overall contract that facilitates the original purchase and, thus, promotes alienation of property." *Crockett* v. *First Federal Savings & Loan Assn.*, 289 N.C. 620, 625, 224 S.E.2d 580 (1976). In subsequent transactions as well, the clause appears, in fact, to encourage conveyances. "The due-on-sale clause, standing by itself, can hardly be a restraint on alienation. In the first place, its effect is to remove a lien or encumbrance — namely the security deed of trust — and thereby render the parcel more alienable — not less. Moreover, and perhaps more importantly, the homeowner whose property is subject to a due-on-sale clause is as free to sell, and, in selling, to realize as much as a homeowner holding the same property free and clear of any encumbrance." *Williams* v. *First Federal Savings & Loan Assn.*, 651 F.2d 910, 923–24 n.29 (4th Cir. 1981).

The court is fully aware that it might be somewhat easier for Bragg to sell this property if he could offer potential purchasers the existing mortgage with an

interest rate substantially below current market levels. The mere fact, however, that the due-on-sale clause makes it more difficult for Bragg to finance the sale in the current market does not mandate the conclusion that it thereby is invalid in law. "To label the loss of a purported favorable economic position as a restraint on alienation is a misconception of that doctrine, which was not intended to provide profitability of alienation, but only the ability to alienate without penalty." ABA Comm. on Real Estate Financing, "Enforcement of Due-On-Transfer Clauses," 13 Real Prop., Prob. & Trust J. 891, 926 (1978). Accord *Holiday Acres* v. *Midwest Federal Savings & Loan Assn.*, 308 N.W.2d 471, 484 (Minn. 1981).

Moreover, the public policy of this state does not demand that due-on-sale clauses be declared unenforceable per se. First, the same reasoning that would nullify these clauses would also invalidate short-term variable rate mortgages. "Nevertheless, if the rationale for declaring a 'due on sale' clause invalid as a restraint on alienation is based upon some notion that buyers will be less willing to buy at a premium property that does not have a long-term fixed mortgage, then one must conclude that short term variable rates and rollover mortgages will similarly impede the sale of property and constitute indirect restraints on the free conveyance of property, and should, therefore, be held invalid. Certainly courts should not get caught in that thicket. The *oft-repeated assumption that a 'due on sale' clause restrains the alienation of property is without satisfactory proof."* (Emphasis added.) *Occidental Savings & Loan Assn.* v. *Venco Partnership,* supra, 477–78. Further, the Connecticut General Assembly has authorized the use of due-on-sale clauses by financial institutions in making graduated payment mortgage loans and reverse annuity mortgage loans. See General Statutes § 36-9g (f) (2) (B). Section 36-9g is captioned, "Alternative mortgages." In pertinent

part, § 36-9g (f) (2) states: "If the mortgagee or its assignee and the mortgagor agree, and at the option of the mortgagee, advances under a reverse annuity mortgage loan may terminate and the entire unpaid balance of the loan plus accrued interest may become due and payable upon the occurrence of any of the following events: . . . (B) *The sale or other transfer of the real estate securing the loan to a person other than any of the original mortgagors . . . .*" (Emphasis added.) This recent legislative declaration of favorable public policy on a due-on-sale clause in one category of Connecticut mortgage loans is very pertinent to the present dispute. See also *Constitution Bank & Trust Co.* v. *Robinson,* 179 Conn. 232, 235–36, 425 A.2d 1268 (1979).

The court concludes that the defendants failed to sustain their burden of proof on their special defenses. The due-on-sale clause is not invalid in any manner or respect as a restraint on alienation. This conclusion makes it unnecessary to discuss at length the supplemental argument of the defendants as to the "unreasonableness" of the alleged restraint. See *Dunham* v. *Ware Savings Bank,* 423 N.E.2d 998 (Mass. 1981).

As previously stated, the defendants submit that the due-on-sale clause "constitutes a penalty, which is unenforceable as [a] matter of equity." This contention lacks substance.

Nicotra does not cite any Connecticut cases which even indirectly support this assertion. His chief reliance is on *Tucker* v. *Pulaski Federal Savings & Loan Assn.,* 252 Ark. 849, 481 S.W.2d 725 (1972). There is no explicit holding in *Tucker* to the effect claimed by Nicotra. The reference in *Tucker* (pp. 854–55) to a due-on-sale clause as a penalty was merely a collateral statement in the course of its basic discussion of a lender's alleged obligation to show an impairment of its security as a condition of invoking the due-on-sale clause.

In any event, this court concludes that the due-on-sale clause cannot be fairly or legally classified as a penalty under the present facts. *King Motors, Inc.* v. *Delfino,* 136 Conn. 496, 499, 72 A.2d 233 (1950); *Lewis* v. *Culbertson,* 124 Conn. 333, 337–38, 199 A. 642 (1938); *Stith* v. *Hudson City Savings Institution,* 63 Misc. 2d 863, 866, 313 N.Y.S.2d 804 (1970); 55 Am. Jur. 2d, Mortgages § 371.

The defendants further maintain that a foreclosure arising out of the due-on-sale clause should not be ordered herein where there is no showing that the plaintiff's security would be impaired, or that the plaintiff would be caused economic hardship if the foreclosure did not proceed. They contend that a foreclosure should not be countenanced where the basic desire of the lender in a due-on-sale case is merely to obtain a higher rate of interest from a buyer, such as Nicotra. They cite cases such as *Wellenkamp* v. *Bank Of America,* 21 Cal. 3d 943, 582 P.2d 970 (1978).

*Wellenkamp* is not persuasive in the present situation. There is a marked difference between the average owner of a one-family home when facing foreclosure, and astute and resourceful commercial property owners and investors, such as Bragg and Nicotra. This narrow view of *Wellenkamp* has been justifiably adopted in the well-reasoned case of *Holiday Acres* v. *Midwest Federal Savings & Loan Assn.,* 308 N.W.2d 471, 484 (Minn. 1981).

Next, even if the prime objective of the bank, or mortgagee, is to obtain payment of interest at a rate prevailing at the time of sale, this is a justifiable goal under the due-on-sale clause. *Century Federal Savings & Loan Assn.* v. *Van Glahn,* 144 N.J. Super. 48, 53, 364 A.2d 558 (1976). This objective may be the basic thrust of the mortgagee without any showing of hardship or impairment of its security by virtue of the proposed sale.

Bragg was an experienced and knowledgable real estate investor when he executed the mortgage with the plaintiff. The same basic comment applied to Nicotra when he signed the purchase agreement with Bragg. Bragg and Nicotra cannot wear the mantle of innocent novices. Hence, Bragg and Nicotra are asking the assistance of the court in re-writing or correcting a mortgage deed merely because they are unhappy at this time with one portion thereof. Their request has no merit. The court sees no valid reason for making a new or different contract for the parties herein. *Farmers & Mechanics Savings Bank* v. *First Federal Savings & Loan Assn.*, 167 Conn. 294, 302, 355 A.2d 260 (1974).

General Statutes § 36-9g (f) (2) permits acceleration of the mortgage debt under a due-on-sale clause without any express condition precedent that the mortgagee demonstrate economic hardship, or that its security has become endangered by the proposed sale. Accordingly, the defendants have not satisfied the court that impairment of the mortgagee's security, or the mortgagee's economic hardship must be established as a condition of enforcement of the due-on-sale clause.

The defendants also urge that the plaintiff should not prevail, in that its obvious desire to obtain an increased interest rate through invocation of the due-on-sale clause is not a "legitimate business interest" which should command the approval of the court. They rely heavily on *First Southern Federal Savings & Loan Assn.* v. *Britton,* 345 So. 2d 300 (Ala. Civ. App. 1977).

Several basic observations will suffice. Initially, *Britton* has been overruled. *Tierce* v. *APS Co.,* 382 So. 2d 485, 487 (Ala. 1979). In *Tierce,* the Alabama Supreme Court approved a lender's legitimate business interest in using the due-on-sale clause to keep its mortgage portfolio at current interest rates.

As stated in *Tierce*: " 'In this situation, equity should not depart from the law which requires it to enforce valid contracts, and strike down the acceleration option simply because its exercise will let the appellees, not the appellants, make the profit on the interest rate occasioned by the increased cost of money.' " Id., 488, quoting *Gunther* v. *White*, 489 S.W.2d 529, 532 (Tenn. 1973).

Next, this court has previously concluded that the due-on-sale clause was not an invalid restraint on alienation, but rather, was a businesslike and reasonable mortgage provision. Under the present circumstances, the claim of absence of a "legitimate business interest" of the plaintiff is not tenable. Accord, *Century Federal Savings & Loan Assn.* v. *Van Glahn,* supra, 53–55.

Reference is made to a stipulation for procedure dated April 20, 1981, executed by all the parties, and specifying the procedure to be followed subsequent to the decision of this court.

The defendants failed to sustain their burden of proof, as to all their special defenses.

The plaintiff is entitled to a judgment of foreclosure. The clerk, on filing hereof, is directed to assign this matter for a hearing, relative to the remaining terms and conditions of said foreclosure.