[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
The plaintiff is a licensed real estate broker. It is seeking a commission from the defendants by virtue of a listing agreement executed by and between the plaintiff and the defendants. The parties agree that the listing agreement is valid. CT Page 4317
However, the defendants deny a commission is due, claiming that the plaintiff failed to obtain a buyer "ready, willing and able" to perform the sales contract.
Again, the parties agree that the defendant executed a valid contract with a third party, but deny a "closing" took place and claim that, lacking a "closing", the commission was not earned.
In the agreement between the defendants and the buyer, the parties agreed to a price of $875,000 for the defendants' real property, personalty, and the business operated on the site in Madison.
The buyer took possession of the property and proceeded to run the business. She paid about $30,000 upon the execution of the agreement and also executed a UCC-1 Financing Statement in favor of the defendant Smith. The buyer assumed an existing mortgage and executed a purchase money note payable to the defendants. Subsequently, she did some renovations to the premises and fired the defendant Smith who had been working for her on the premises.
The agreement required that the buyer re-finance the property so as to pay off the existing mortgages, but after she had made the periodic payments for 18 months, the buyer concluded that re-financing in the amount required was impossible. She then surrendered possession to the defendants and returned to her the $30,000 down payment and the cost of the renovations. The loan payments were not returned.
The issue to be resolved is whether this transaction entitled the plaintiff to a commission under the listing agreement.
DISCUSSION
 I
After the defendants and her buyer entered into the agreement in question, the only acts left to be done by and between the parties were for the buyer to obtain new financing and from the proceeds pay off the existing loans. The defendants would then issue a deed to the real property and release the UCC-1.
The defendants argue that since the buyer returned the CT Page 4318 property to the seller and thus the transfer was not "completed", the plaintiff-agent did not obtain a person "ready, willing andable" to perform. This proposition fails to recognize the extent to which the parties had proceeded and the changes in their legal positions which had occurred.
To apply the reasoning of the defendants to similar transactions, the court offers the example of this same scenario, except that the seller has taken back a second mortgage and the buyer has taken title to the real property. Were the buyer to default on either or both mortgages, one cannot imagine the defendant advancing the theory that this buyer was not "ready, willing and able" to perform the contract. As in the present case, the contract would have been deemed performed.
 II
The defendants' position also ignores the language of the listing agreement, Exhibit A, which obligates the defendant to pay a commission
 . . . whenever . . the Property shall have been SOLD/LEASED/EXCHANGED or a customer procured, ready, able and willing to BUY/LEASE/EXCHANGE the Property for the price as shown in No. 5 above or for any other price or upon such terms as may be agreed to buy the Owner, . . .
It appears obvious that there was at the least an "exchange" upon such terms as were agreed to by the Owner — these defendants.
 III
Finally, the defendants' position in this case ignores long established case law in Connecticut. There are numerous decisions which stand for the proposition that "a broker has fully performed his task when he brings the parties to an enforceable agreement."Walsh v. Turlick, 164 Conn. 75 (1972).
Nor is it necessary for title to pass till a future date in order for the commission to become due. In a case similar to this one a bond for deed was executed. The court stated:
 "`Under the doctrine of equitable conversion . . . the purchaser of land under and executory contract is regarded as the owner, CT Page 4319 subject to the vendor's lien for the unpaid purchase price, and the vendor holds the legal title in trust for the purchaser. 55 Am.Jur. 782 [Vendor and Purchaser § 356]. The vendor's interest thereafter in equity is in the unpaid purchase price, and is treated as personalty; Bowne v. Ide, 109 Conn. 307 [147 A. 4 (1929)]; while the purchaser's interest is in the land and is treated as realty. 18 C.J.S. 49 [Conversion § 9].' Cooper v. Polayes, 19 Conn. Sup. 353, 354-55, 113 A.2d 599 (1955)." Society for Savings v. Bragg, 38 Conn. Sup. 8, 13-14, 444 A.2d 919 (1981). "A broker has fully performed his task when he brings the parties to an enforceable agreement." Walsh v. Turlick, 164 Conn. 75, 80, 316 A.2d 759 (1972). If, without any fraud, concealment, or other improper practice on the part of the broker, the principal accepts the person presented . . . upon the terms . . . proposed . . . and enters into a binding and enforceable contract with him for the purchase of the property, the commission is fully earned." Meagher v. Reeney, 96 Conn. 116, 118, 113 A. 169 (1921).
 Francis T. Zappone Co. v. Mark, 197 Conn. 264, 267-68 (1985).
The defendants have not presented evidence nor have they argued that the parties to the agreement in this case were not bound by it. An examination of the pertinent documents compels the conclusion that the defendants and the buyer entered into an enforceable agreement. The defendants could have sued in specific performance and the buyer, upon tendering payment could have sued the defendants to obtain a deed conveying title.
The court feels the defendants misinterpreted the need for a future transfer of title and the buyers' having to re-finance.
As the court noted in Zappone:
 A binding sales agreement such as a valid bond for deed passes equitable title, under the doctrine of equitable conversion, upon its execution. Cooper v. Polayes, supra. The parties are bound from that instant and the formal transfer of "paper" title can occur at some future date." Supra, at 268.
CONCLUSION
The court concludes that the defendants became liable to pay the plaintiff's commission on the date of the transaction, April 30, 1990. CT Page 4320
Judgment may enter for the plaintiff in the amount of $17,500.00, the amount called for in the listing agreement. The plaintiff is entitled to legal interest from April 30, 1990 to April 9, 1998, the date of this decision, in the amount of $13,899.20, for a judgment of $27,899.20.
Costs may be taxed by the plaintiff.
DeMAYO, S.T.R.